NATIONAL RETIRED TEACHERS ASSOCIATION et al., Appellants,

v.

UNITED STATES POSTAL SERVICE et al.

No. 77–1590.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 16, 1979.

Decided Feb. 16, 1979.

As Amended Feb. 26, 1979.

Jack Lahr, Washington, D. C., with whom Ruth P. Roland and Jerry R. Selinger, Washington, D. C., were on brief, for appellants.

Kenneth M. Raisler, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Peter E. George and Stephen S. Cowen, Asst. U. S. Attys., Washington, D. C., were on brief, Robert N. Ford and David G. Hetzel, Asst. U. S. Attys., Washington, D. C., for appellees.

Before McGOWAN, LEVENTHAL and MacKINNON, Circuit Judges.

Opinion for the Court filed by LEVENTHAL, Circuit Judge.

LEVENTHAL, Circuit Judge:

At issue in this case is the validity of Postal Service Manual § 134.57, a regulation issued by the United States Postal Service (USPS) on August 26, 1975.[1] That regulation defines the conditions under which nonprofit organizations qualified for special third-class mailing privileges under § 300.221 of the Domestic Mail Classification Schedule (DMCS)[2] may receive the lower third-class bulk nonprofit rate for matter mailed by them. Specifically, § 134.57 limits the availability of the nonprofit rate to matter owned by a qualified nonprofit organization; prohibits a quali-

---

1. 40 Fed.Reg. 37209 (1975).

2. DMCS § 300.221 provides:

The nonprofit bulk rate is available for bulk rate third-class mail mailed by qualified nonprofit organizations. A qualified nonprofit organization is a religious, educational, scien-

fied nonprofit organization from delegating or lending the use of its special privilege; and denies the nonprofit rate to "[c]ooperative mailings involving the mailing of matter in behalf of or produced for an organization not authorized to mail at the special bulk third-class rate." [3]

Appellants, affiliated nonprofit organizations with a combined membership of 12 million, are qualified nonprofit organizations under DMCS § 300.221. In the summer of 1975, they sought to mail to their newly enrolled members, at the third-class nonprofit rate, a catalog of pharmaceutical products available for purchase by mail. Mail orders were to be serviced by Retired Persons Services, Inc. (RPS), a separate nonprofit corporation controlled by appellants. RPS was not qualified for special third-class mailing privileges.

USPS refused to accept the catalog for mailing at the third-class nonprofit rate.

Upon application by the appellant associations, the Director of the Office of Mail Classification ruled that the proposed mailing was a cooperative mailing under § 134.-57 and was therefore ineligible for the nonprofit rate.[4]

Appellants sought judicial review, hardly surprising in view of the substantial financial impact of the ruling.[5] The district court granted USPS' motion for summary judgment.[6] On appeal, the associations press three claims: 1) USPS lacked authority to issue § 134.57 because the regulation constituted a change in a mail classification, a matter reserved exclusively to the Postal Rate Commission (PRC) under the Postal Reorganization Act of 1970 (Act);[7] 2) assuming USPS authority, § 134.57 is nevertheless invalid because it was not issued in accordance with the notice and comment procedures required by the Administrative

3. Section 134.57 provides in full:

> An organization authorized to mail at the special bulk third-class rates for qualified nonprofit organizations may mail *only* its own matter at these rates. An organization may not delegate or lend the use of its permit to mail at special third-class rates to any other person, organization or association. Cooperative mailings may not be made at the special bulk third-class rates for qualified nonprofit organizations if one or more of the cooperating persons or organizations is not entitled itself to the special rates. Cooperative mailings involving the mailing of matter in behalf of or produced for an organization not authorized to mail at the special bulk third-class rates for qualified nonprofit organization must be paid at the applicable regular rate. If customers disagree with a postmaster's decision that the regular rate of postage applies to a particular mailing, the procedures in 146.14 may be followed.

(Emphasis in original).

tific, philanthropic, agricultural, labor, veteran's or fraternal organization or association that is not organized for profit and none of the net income of which inures to the benefit of any private stockholder or individual. Before being entitled to mail at the nonprofit bulk rate, the organization shall furnish proof of its qualifications to the Postal Service. DMCS § 300.221 continues a statutory mail classification first adopted by Congress in 1951. *See* 65 Stat. 672 (1951); 39 U.S.C. § 4452 (1964) (superseded). The Postal Reorganization Act of 1970, Pub.L. No. 91–375, 84 Stat. 719, effectively repealed all statutory mail classifications, and created a new procedure for administrative determination of mail classifications. 39 U.S.C. § 3623(a) (1976) required USPS to request from the Postal Rate Commission (PRC) a recommended decision on establishing a mail classification schedule within two years of the applicable effective date. In response to that request, the PRC recommended the adoption of the DMCS including § 300.221. *See* Postal Rate Commission, Docket No. MC73–1, *Opinion and Recommended Decision* 128 (April 15, 1976). Pursuant to 39 U.S.C. § 3625 (1976), the Governors of the Postal Service approved the recommended decision. *Decision of the Governors of the United States Postal Service on Establishing a Mail Classification Schedule* (June 2, 1976).

During the interim between passage of the Act and promulgation of the new classification schedule, the old classifications remained in effect as regulations of the Postal Service. *See* Postal Reorganization Act of 1970, Pub.L. No. 91–375, § 5(f), 84 Stat. 775.

4. J.A. at 113–14.

5. On sales generated by the RPS catalog, which we were told at oral argument totaled $70 million a year, appellant associations receive one per cent under a licensing agreement. J.A. at 93.

6. *National Retired Teachers Ass'n. v. USPS*, 430 F.Supp. 141 (D.D.C.1977).

7. Pub.L. No. 91–375, 84 Stat. 719.

Procedure Act (APA);[8] 3) the district court erred in granting summary judgment because genuine issues of material fact remained unresolved. We affirm.

## A. *Rule As Valid Interpretation Of Mail Classifications*

As to appellants' first claim, we conclude that § 134.57 was a valid exercise by USPS of authority to interpret the mail classification schedule established by the PRC.

Under the Act, ultimate authority to fix mail classifications resides with the Governors of USPS.[9] This authority is exercised by means of a three step classification process. First, USPS must request a recommended decision from the Postal Rate Commission, a regulatory body independent from USPS.[10] The PRC must then make a recommended decision, taking into account the policies of the Act and certain enumerated factors.[11] Finally, the Governors may approve, allow under protest, reject, or modify a recommended decision of the PRC.[12]

■ Although appellants state flatly that "all congressionally delegated authority over mail classifications was assigned to the [PRC];"[13] we think it clear that the PRC does not have exclusive jurisdiction of all matters touching on mail classifications. Instead, PRC jurisdiction need be invoked only where a USPS proposal amounts to a change in a mail classification. USPS possesses a *residuum of authority to interpret* mail classifications in the process of implementing them, so long as that interpretation does not effect a substantive change in the types of mail or the identity of mailers encompassed within the classification.

■ This conclusion is fairly apparent from the language of 39 U.S.C. § 3623 (1976), the provision of the Act governing mail classifications. That section requires that USPS request a recommended decision from the PRC only "on *changes* in the mail classification schedule."[14] The conclusion also stems from the practical reality that a classification schedule can only define general outlines; USPS must retain some flexibility and discretion to interpret the general provisions of the mail classification schedule in day-to-day implementation.[15] USPS need not rely solely on case-by-case interpretation. It may choose to exercise its rulemaking power[16] by an interpretative rule. Such an interpretative rule is general, in the sense that it guides all postal officials in applying a mail classification and assures that they will provide a consistent and uniform interpretation, but the rule remains one of interpretation of the classification.

The essence of appellants' claim is not that USPS has no interpretative discretion, but that § 134.57 does indeed work a change in the scope of a mail classification. In support, appellants place principal reliance on the language of DMCS § 300.221 and the statutory classification that it replaced.[17]

---

**8.** 5 U.S.C. § 553 (1976).

**9.** 39 U.S.C. § 3621 (1976).

**10.** *Id.* § 3623(a), (b). Section 3623(a) provides for a request for a recommended decision on the initial establishment of a mail classification schedule, and § 3623(b) provides for requests for recommended decisions on changes in the mail classifications schedule. Section 3623(b) also permits the PRC to submit recommended decisions to the Governors on its own initiative.
As to the independent status of the PRC, *see* 39 U.S.C. §§ 3601–04 (1976).

**11.** 39 U.S.C. §§ 3623(c), 3624 (1976).

**12.** *Id.,* § 3625.

**13.** Brief for Appellants at 15.

**14.** 39 U.S.C. § 3623(b) (1976) (emphasis added).

**15.** This view is reflected in the recent recommended opinion and recommended decision of the PRC in Docket No. MC76–5, *Basic Mail Classification Reform Schedule—Proper Scope and Extent of Schedule,* Vol. 1, at 108–16 (Nov. 29, 1978). This recommended decision has not yet been approved by the Governors of USPS.

**16.** 39 U.S.C. § 401(2) (1976) (USPS has the power to "adopt, amend, and repeal such rules and regulations as it deems necessary" to accomplish its objectives).

**17.** 39 U.S.C. § 4452 (1964) (superseded). Strictly speaking, § 134.57, which was issued in 1975, interpreted the old statutory classifica-

Under those provisions, the third-class bulk nonprofit rate is available for matter "mailed by" qualified nonprofit organizations. These words are read literally by appellants, so as to place no restriction on what may be mailed so long as the mailing itself is by the qualified nonprofit organization. Thus, appellants argue that by adopting § 134.57, USPS impermissibly restricted the availability of the special third-class rate, a function reserved to the PRC.

■ We believe USPS validly exercised its interpretative discretion in concluding in § 134.57 that the "mailed by" language of the governing provisions contained, by fair implication, limitations on the use of the nonprofit rate. Congress, in enacting the statutory classification, and the PRC, in adopting it following passage of the Act, established certain criteria for qualification for the nonprofit rate. Chief among them was the requirement that an organization be a "religious, educational, scientific, philanthropic, agricultural, labor, veterans or fraternal" organization.[18] The USPS interpretation reflects a conclusion that Congress and the PRC contemplated that the nonprofit rate would be used for the purposes of the listed organizations, and not for other purposes—such as commercial activities—inconsistent with the grant of

qualification. Viewed in this light, § 134.-57's limitations are eminently reasonable as effectuating the implicit purpose of the provisions.[19]

■ Appellants' position implies that, whatever the reasonableness of USPS's interpretation, it represents a departure from USPS's prior actual practice or policy. Yet appellants point to no record evidence demonstrating a different application by USPS prior to the issuance of § 134.57. The record does not illuminate the practice of the Post Office Department under the statutory classification prior to the enactment of the Postal Reorganization Act. But it does show that since the passage of the Act, USPS has applied the classification in a manner consistent with the interpretation adopted in § 134.57.[20] In this posture, we credit USPS's contention that the interpretation did not change appellants' rights and obligations under DMCS § 300.221 and the earlier classifications.

### B. Notice And Comment Requirement Inapplicable

Appellants' other contentions do not require extended discussion. As to the claim that notice and comment procedures were not followed, USPS urges that 39 U.S.C. § 410(a) (1976) exempts it from the requirements of the APA.[21] We do not decide this

---

tion, which remained in effect as a regulation of the Postal Service following the enactment of the Act and prior to final approval of the DMCS, which did not occur until 1976. *See* note 2 *supra.*

**18.** DMCS § 300.221, quoted in note 2 *supra.*

**19.** Further support is found in 39 U.S.C. § 403(c) (1976), which prohibits USPS from granting any "undue or unreasonable preferences" to mail users. USPS could certainly take this prohibition into account in devising the proper interpretation of the applicable classifications. We do not suggest, however, that § 403(c) provides USPS the power unilaterally to change classifications when it perceives undue discrimination or preferences in the classifications established by the PRC. In that circumstance, the proper recourse would be a request to the PRC for a recommended decision on a classification change.

**20.** *See* J.A. at 133–81.

**21.** 39 U.S.C. § 410(a) (1976) provides in pertinent part:

Except as otherwise provided . . . no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5 [the APA], shall apply to the exercise of the powers of the Postal Service.

The district court concluded that a reading of § 410(a) that exempted USPS from the APA would defy "simple rules of grammar." *National Retired Teachers Ass'n v. USPS,* 430 F.Supp. 141, 147 (D.D.C.1977). In the district court's view, the APA's rulemaking provision, 5 U.S.C. § 553 (1976), was not a federal law "dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds." USPS contends that its view is entirely supportable by a natural reading of § 410(a). In effect, insertion of the phrase "including the provisions of chapters 5 and 7 of title 5" reflected a congressional conclusion that the APA was itself a law dealing with federal officers or employees. USPS finds further support in the numerous points in the Act at which Congress expressly made portions of the APA applicable, an effort that would have been su-

question. Our discussion of § 134.57 as an exercise of interpretative discretion by USPS indicates that, in any event, the section would fall within the "interpretative rule" exception to the notice and comment procedures.[22]

### C. *Propriety Of Summary Judgment*

We find little merit in appellants' claim of error in the granting of summary judgment. The associations assert that a genuine issue of fact remained as to whether the Director of the Office of Mail Classification considered all factors in concluding that Retired Persons Services benefited in part from the cooperative mailing. Because RPS is a nonprofit corporation controlled by the associations, it is argued, any benefit inures not to the corporation but to the associations' membership. We do not think form can be so lightly disregarded. The separate corporate structure was necessary precisely because RPS's commercial activities are inconsistent with the types of purposes required for qualification under DMCS § 300.221. The associations could not have engaged in such activity themselves without risking loss of their nonprofit privileges. The focus of § 134.57 is the nature of the activities of the cooperative organizations, not the ultimate beneficiaries of the mailing. For this reason, the Director's determination that the cooperative mailing proposed here fell within the rule is clearly supportable.[23]

*Affirmed.*

---

perfluous if the APA applied in any event. *See* 39 U.S.C. § 410(b) (1976) (Freedom of Information Act, 5 U.S.C. § 552 (1976); Privacy Act, 5 U.S.C. § 552a (1976); Sunshine Act, 5 U.S.C. § 552b (1976), apply to USPS); 39 U.S.C. § 3001(f) (1976) (mailability proceedings to be conducted in accordance with APA); 39 U.S.C. § 3603 (1976) (PRC action subject to APA).

**22.** 5 U.S.C. § 553(b)(A) (1976); *see generally Guardian Fed. Sav. & Loan Ass'n. v. Federal Sav. & Loan Ins. Corp.*, 191 U.S.App.D.C. 135, 589 F.2d 658 (1978).

**23.** Appellants also point to a letter from the Director of the Office of Mail Classification

that, it is claimed, raises a material issue of USPS's interpretation of § 134.57. J.A. at 288–90. Certain language in that letter does suggest that ownership of the matter sought to be mailed is the determinative criterion, one that is arguably met by the associations' proposed mailing. But the letter holds only that ownership is a necessary condition to eligibility of a mailing for the nonprofit rate. Since the permit holder was found not to own the matter in issue, there was no occasion to consider whether ownership was also a sufficient condition to availability of the nonprofit rate.