SHELBY RESOURCES, INC., Plaintiff,

v.

UNITED STATES POSTAL SERVICE
and Postal Rate Commission,
Defendants.

No. 84 Civ. 8479 (CLB).

United States District Court,
S.D. New York.

Oct. 21, 1985.

Myron Engelman, White Plains, N.Y., for plaintiff.

Richard Mark, Asst. U.S. Atty., Joseph F. Wackerman, U.S. Postal Service, David L. Ruderman, Postal Rate Com'n, Washington, D.C., for defendants.

MEMORANDUM AND ORDER

BRIEANT, District Judge.

During the Great Depression, there was a notice in common use sent out with past due invoices. This notice read: "Please pay us now, so that we can pay them, so that they can pay him, and he can pay you." This notice called to the attention of the reader the well-known effect of the velocity of money. Prompt movement of money from customer to supplier, and investor to user is an essential cornerstone of our prosperity. As the velocity of money slows down, so does the gross national product of goods and services diminish.

The greatest single factor affecting the velocity of money is the Postal Service, because even today, notwithstanding the availability of wire services and automatic electronic transfer of funds, large quantities of payments are made by first class mail. Other activities affecting the level of economic activity, including the placement and receipt of orders for goods and servic-

es, are largely dependent on the United States mails.

No reasonable person denies that good, prompt and reliable postal service is essential to the welfare of our nation. It would also follow that such service should be furnished at a level of performance substantially equal to all business customers, and that the quality of service should not so vary between locations and communities as to discriminate in favor of some locations and communities and those who do business therein, as against others.

Having stated all of these self-evident truths, we must follow with another; not every wrongful omission or failure on the part of the government bureaucracy can be redressed in the United States District Court. The Executive Branch, and also the Legislative Branch in its legislative oversight activities, each bear a great responsibility for the quality and the equality of such services, and in the final analysis performance of governmental services in a fair and equal manner rests essentially on the sense of duty and moral obligation of those men and women who actually render the service.

As will be noted below, plaintiff, Shelby Resources, states a real and substantial grievance insofar as concerns its postal service. With minor exceptions, defendants do not dispute the factual contentions of Shelby. Defendant United States Postal Service moves for summary judgment in its favor and the Postal Rate Commission moves separately to dismiss for want of subject matter jurisdiction.

Shelby describes itself as a "full service financial organization." As such, it receives at its office by first class mail, a substantial amount of payments, and frequent requests from patrons for service. Like most such businesses, Shelby starts its office operations at 9:00 A.M. or earlier, and opening the mail ordinarily would be the first order of business. Receipts must be recorded on the books and carried to the

bank in order to obtain interest from day of deposit; requests for services must be placed in the course of fulfillment; and other business matters which arrive by mail, require attention of office personnel.

Plaintiff formerly had its office at Great Neck, New York where daily mail delivery was made to Shelby almost without exception, between 9:00 A.M. and 9:30 A.M. (Answering Affirmation, ¶ 26).

On April 1, 1983 Shelby commenced doing business at No. 5 Waller Avenue, White Plains, New York. These premises are a brand new, substantial office building, recently constructed in what theretofore had been a largely residential or vacant area. The building is occupied by a number of unrelated tenants, besides Shelby, all of whom are dependent to one degree or another on mail service.

The premises are on a carrier route known as Route 0110, assigned to the White Plains Post Office. This route has existed for a long time, and at least prior to 1978. As of April 1985 it contained a total of 305 possible deliveries on the route. The business deliveries account for 63% of the total deliveries (the rest being residential), and the mail person arrives at 5 Waller Avenue when approximately 60% of the route has been served. Only 12 nonbusiness or residential deliveries are made before the carrier arrives at Shelby's building.[1]

It is pointed out that although the official delivery policy and criteria for the establishment and extension of delivery service to business areas do not specify a time of day when a business *must* receive delivery, it is clearly Post Office department policy to facilitate delivery to businesses "as early as possible, if it is economically feasible." Essentially this means that when routes are created or adjusted, the business sections will be located insofar as possible at the portion of the route to be served first.

---

1. The same overburdened postal route 0110 serves the Office of the Clerk of this Court, at White Plains, also long after 9:30 A.M. Our enterprise is, however, non-profit, and our back-

log large enough so that unlike Shelby, our efficiency would not be improved by earlier delivery.

Shelby found that initially its mail arrived no earlier than 11:30 A.M. and as time passed it began to arrive later and later in the business day, sometimes as late as 3:00 P.M. Shelby has made numerous complaints to the Postal Service and also filed a complaint with the Postal Rate Commission. Within reason the officials have attempted to respond to these complaints, but it is clear that Shelby is not now receiving and is unlikely to receive in the near future, mail service of the same quality which it enjoyed in Great Neck, New York. This in turn creates a discrimination which is unwarranted, and unfair, having an adverse impact on businesses such as Shelby and its landlord, who compete in turn for customers and tenants with those other premises which enjoy the type of postal service which Shelby formerly had in Great Neck.

We need not look too far to find the cause of this breakdown in service. The Postmaster's Affidavit, essentially the local response, made the point that the managing agents of the building could have participated in a voluntary program for centralized delivery points within this multi-tenanted office building, but refused to do so, so that the carrier is obliged to go from office to office on all three floors of the new building, delivering mail to the various tenants. Furthermore, plaintiff was invited to rent a Post Office box at its own expense, or to pay an additional charge for call privileges. This type of mail services gives the addressee immediate access whenever the Post Office is open, to all mail which has been sorted. Apart from the additional postal service fees connected with this service, personnel of the addressee must leave the place of business and go physically to the Post Office. A single trip at 9:00 A.M. will not be satisfactory, because all mail has not been placed in the post boxes or sorted by that hour. Accordingly, if window privileges or a post box were used, this plaintiff would have to make several trips to the Post Office during a business day at considerable expense not incurred by those similarly situated who are fortunate enough to have retained their offices in Great Neck.

It is also apparent that the particular carrier route, 0110, is overloaded with mail. According to the schedule for the route, the carrier should arrive at the building between 12:45 P.M. and 1:15 P.M.

Increased prosperity and new construction have increased the mail volume substantially in White Plains, according to the Postmaster, 22.4% compared to the last fiscal year. This naturally resulted in carriers being held at the Post Office longer than usual, sorting their routes and casing their mail for delivery. The later the carrier leaves the Post Office, the later he is likely to arrive at any particular customer. Essentially, the carrier will arrive at 5 Waller Avenue approximately two hours and 35 minutes after leaving the office each day, but the time that he leaves the office is likely to be delayed because of a chronic increase in workload.

The service being provided to Shelby is unlikely to improve and is probably not in violation of Post Office policy. There is no fixed time of day by which mail for business customers is required to have been delivered, in White Plains or anywhere.

The amended complaint herein founds subject matter jurisdiction upon the Postal Reorganization Act of 1976. 39 U.S.C. § 409, *et seq.* The only grant of district court jurisdiction found therein is § 409(a) of Title 39, which reads as follows:

"Except as provided in section 3628 of this title, the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service. Any action brought in a State court to which the Postal Service is a party may be removed to the appropriate United States district court under the provisions of chapter 89 of title 28."

Section 3628 of Title 39 contains a provision for direct review in the Court of Appeals of certain actions of the postal authorities, together with a limitation of judicial power. That section reads as follows:

"A decision of the Governors to approve, allow under protest, or modify the recommended decision of the Postal Rate Com-

mission may be appealed to any court of appeals of the United States, within 15 days after its publication by the Public Printer, by an aggrieved party who appeared in the proceedings under section 3624(a) of this title. The court shall review the decision, in accordance with section 706 of title 5, and chapter 158 and section 2112 of title 28, except as otherwise provided in this section, on the basis of the record before the Commission and the Governors. The court may affirm the decision or order that the entire matter be returned for further consideration, but the court may not modify the decision. The court may not suspend the effectiveness of the changes, or otherwise prevent them from taking effect until final disposition of the suit by the court. No court shall have jurisdiction to review a decision made by the Commission or Governors under this chapter except as provided in this section."

■ This Court concludes that these sections, read together, provide the sole remedy for a user of postal services who is not receiving adequate service or service equal to that furnished to others. We find no residual jurisdiction, on a due process theory or otherwise to deal with that portion of the controversy which concerns the United States Postal Service and agree generally with the similar analysis of subject matter jurisdiction expressed in *Tedesco v. U.S. Postal Service,* 553 F.Supp. 1387, 1390 (W.D.Pa.1983). Although we believe Shelby presents a genuine controversy, and that its rights are being adversely affected, in light of the Congressional expressions quoted above and analyzed in *Tedesco, supra,* this Court finds it has no subject matter jurisdiction to deal with the injury. Since we find no subject matter jurisdiction, there is no need to engage in the analysis of *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) for purposes of determining whether a private cause of action exists for a violation of the statutory duty to provide prompt, efficient service, and the implied duty under the statute that customers similarly situated shall be treated equally.

We then consider so much of the complaint as is directed against the Postal Rate Commission.

On May 21, 1984, Shelby filed a complaint with the Commission alleging that consistent late delivery of mail violated certain provisions of the Postal Reorganization Act of 1970. As now interpreted by Shelby, this complaint sought to obtain a national standard for delivery of business mail between 9:00 A.M. and 9:30 A.M. or such other time as the Commission might find proper.

■ Such a complaint is clearly authorized by § 3662 of Title 39. The Commission apparently gave the complaint short shrift, dismissing it prior to answer, a procedure not permitted in its own regulations, see 39 C.F.R. § 3001.84(a). The Commission apparently regarded Shelby's request as a "request for preferential treatment to a single postal patron" and therefore not "a question of national scope or importance." See Postal Service Motion to Dismiss, pp. 14–15. The Commission found that the Postal Service had acted in good faith in considering Shelby's grievance, that it was "unable to remedy" the grievance, and that there was no arbitrary, capricious or unreasonable action by the Postal Service.

■ Insofar as the Commission is concerned, the complaint asks this Court to reverse the order of dismissal prior to answer and direct the Commission to consider the complaint as required by the Act. There is no showing that the Commission did not consider the complaint. The Commission may have misinterpreted the grievance and may be incorrect in regarding it as purely local in nature, but the conclusion on the part of the Commission that the Postal Service is unable to remedy the grievance, while shocking and disappointing, is hardly clearly erroneous.

■ Our analysis of the statute indicates that there is no federal district court subject matter jurisdiction over actions against the Postal Rate Commission to review its rulings or compel it to follow its own regulations, and a fair reading of the statute

suggests that all such efforts to review decision or orders of the Commission are within the original subject matter jurisdiction of the Court of Appeals. On the merits, such review in the Court of Appeals could very well be an exercise in futility. The standard of such review is limited expressly to that set forth in 5 U.S.C. § 706.

Accordingly, while we applaud the efforts of Shelby, and its attorney, Myron Engelman, Esq.,[2] to light a candle in this case, rather than merely cursing the darkness, we are constrained to dismiss as to both defendants for want of subject matter jurisdiction in this Court.

The Clerk shall enter final judgment dismissing the complaint. No costs.

So Ordered.

---

**2.** Attorney Engelman's office is also served by the same postal route 0110.