**COMBINED COMMUNICATIONS COR-PORATION and the Nashville Banner Publishing Company**

v.

**UNITED STATES POSTAL SERVICE.**

No. 3-87-0214.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 27, 1988.

William R. Willis, Jr., Willis & Knight, Nashville, Tenn., Timothy J. May, David C. Todd, Patton, Boggs and Blow, Washington, D.C., Alan Marx, King & Ballow, Nashville, Tenn., Lawrence J. Aldrich, Gannett Co., Arlington, Va., for plaintiffs.

James C. Thomason, III, Asst. U.S. Atty., Nashville, Tenn., Grayson M. Poats, Associ-

ate General Counsel, Joseph F. Wackerman, U.S. Postal Service, Washington, D.C., for defendant.

## MEMORANDUM

WISEMAN, Chief Judge.

Plaintiffs Combined Communications Corporation and The Nashville Banner Publishing Company brought this action against defendant United States Postal Service (USPS), alleging that the USPS unlawfully exceeded its statutory authority under the Postal Reorganization Act of 1970, 39 U.S.C. §§ 101 *et seq.* (1980), by promulgating an administrative regulation that effectively amended the Domestic Mail Classification Schedule (DMCS).[1] Plaintiffs seek: (1) a declaration that the USPS' administrative regulation—DMM 425.226—is unlawful to the extent that it modifies the existing DMCS; (2) an injunction requiring the USPS to carry *The Sunday Tennessean* FOCUS issue and *The Nashville Banner* NEIGHBORHOOD issue at second-class rates; and (3) a refund of all postage paid by plaintiffs in excess of second-class rates for mailing these issues. Both plaintiffs and the USPS have moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the Court grants plaintiffs' motion in part and denies the USPS' motion.

### I. *Postal Reorganization Act of 1970*

In enacting the Postal Reorganization Act of 1970 (Act), Congress created the USPS as "an independent establishment of the executive branch of the Government of the United States." 39 U.S.C. § 201. The exercise of the USPS' broad statutory powers, *see* 39 U.S.C. § 401, is directed by an eleven member Board of Governors (Board). 39 U.S.C. § 202. The Board is composed of nine members who are appointed by the President with the advice and consent of the Senate (Governors), the Postmaster General, and the Deputy Postmaster General. *Id.* Although the Act vests ultimate ratemaking and classification authority in the Governors of the

USPS, *see* 39 U.S.C. § 3621, the primary responsibility for establishing reasonable and equitable mail classifications and rates rests with the Postal Rate Commission (PRC). *See* S.Rep. No. 91–912, 91st Cong., 2d Sess. 4 (1970).

The PRC, like the USPS, is an independent establishment of the executive branch, 39 U.S.C. § 3601, consisting of five presidentially-appointed members. Although the overall scheme and legislative history of the Act clearly indicate that Congress intended the PRC to be "an integral part of the [USPS]" and "a true partner of the Board ... in every aspect of postal operations," it is equally clear that Congress desired the PRC to be "fully independent of the Board ... and ... any influence whatsoever of the Postmaster General or of members of his staff." *See* S.Rep. No. 91–912 at 13. Congress unquestionably felt such complete independence was necessary to insure that mail rates and classifications were established "on the basis of expert consideration of the overall value of the service provided and the allocation of costs on a scientific or quasi-scientific basis," isolated from congressional lobbying efforts and USPS operational and cost concerns. S.Rep. No. 91–912 at 11, 13. *See also* 116 Cong.Rec. 22,051 (1970) (statement by Sen. McGee).

The Act includes rather specific and comprehensive ratemaking and classification procedures. *See* 39 U.S.C. §§ 3622–23. Under the Act, the USPS may request that the PRC submit, or the PRC may submit on its own accord, a recommended decision concerning changes in the DMCS to the Governors. 39 U.S.C. § 3622. The PRC has "full authority without limitation and subject only to the general guidelines and policy of the [A]ct to establish classes of mail subject to approval of the Governors." S.Rep. No. 91–912 at 11. Once such a recommendation is made, "the Governors may approve, allow under protest, reject or modify [the] decision." 39 U.S.C. § 3625. Ultimately, the Governors' decision may be

---

1. The DMCS is a set of regulations that define eligibility for entry into the various mail classifications.

appealed to the appropriate United States Court of Appeals. 39 U.S.C. § 3628. "No [other] court [has] jurisdiction to review a decision made by the [PRC] or Governors under [chapter 36 of the Act]." *Id. See also The Enterprise, Inc. v. Bolger,* 774 F.2d 159, 161 (6th Cir.1985).

## II. *Factual Background and Procedural History*

In late 1982 or early 1983, *The Tennessean* and *The Nashville Banner,* along with a number of other newspapers across the country, began distributing what have since become known as "Plus" issues.[2] These issues—*The Tennessean* FOCUS and *The Nashville Banner* NEIGHBORHOOD —were delivered by plaintiffs on a weekly basis to subscribers of their respective newspapers along with the regular issues delivered on that day. *The Tennessean* and *The Nashville Banner* also distributed these "Plus" issues to *non*subscribers through the USPS at second-class rates.[3]

On December 27, 1984, Advo–System, Inc., a large-volume mailer of third-class bulk mail, filed a complaint with the PRC, pursuant to 39 U.S.C. § 3662 (*Advo I*),[4] requesting it "to investigate the rates charged by the [USPS] for improper mailings by daily newspapers of weekly 'total market coverage' ... products ['Plus' issues] to nonsubscribers at second-class ... rates." Following an administrative hearing, the PRC concluded that "Plus" issues were not properly characterized as "issues" of daily newspaper publications and, therefore, "must independently qualify" for second-class mail rates. Accordingly, the PRC issued a Recommended Decision

adopting the following proposed addition to the DMCS:

DMCS 200.0123 *Second–Class Mail*

For purposes of determining second-class eligibility ... an "issue" of a newspaper ... shall be deemed to be a separate publication if:

a. it is published at a regular frequency *on the same day as another regular issue of the same publication,* and

b. it is distributed to more than (i) 10 percent nonsubscribers, or (ii) twice as many nonsubscribers as the other issue on that same day, whichever is greater.

Such separate publications must independently meet the qualifications [for second-class rates].

The PRC felt that DMCS 200.0123 was necessary "to clarify or correct language that [had] led to misinterpretations in the application of the DMCS to ['Plus' issues]." While the PRC explicitly acknowledged that the amendment applied "solely to ['Plus'] issues published ... on the same day as another issue of the same publication," it stressed that its Opinion "[did] *not* authorize *non-daily* newspapers to mail [such issues at second-class rates]." In response to such a suggestion, the PRC noted: "If this practice should develop, we believe with the guidelines provided herein the [USPS] could handle it administratively, or if necessary, propose additional clarifying DMCS language."

On March 3, 1986, the Governors approved the PRC's recommended amendment. The following day, the Board ordered that DMCS 200.0123 would become effective on June 8, 1986. On June 2, 1986,

---

**2.** The PRC has defined these "Plus" issues as total market coverage products consisting primarily of advertising material. To the extent that these issues contain any editorial content, it is clearly incidental to the major objective of the issues, which is to convey advertising.

**3.** Prior to March 4, 1983, the USPS used certain administrative guidelines to determine whether a particular "Plus" issue constituted a separate publication required to qualify independently for second-class rates. These guidelines provided that "[a] regularly published issue or edition that is different in content than anything regularly distributed to subscribers and that is de-

signed primarily for distribution to nonsubscribers does not constitute either a regular issue or edition."

**4.** Section 3662 provides:

Interested parties who believe the [USPS] is charging rates which do not conform to the policies set out in this title or who believe that they are not receiving postal service in accordance with [such policies] may lodge a complaint with the [PRC]....

The PRC's decision is reviewable in accordance with 39 U.S.C. § 3628, if the matter is covered by 39 U.S.C. §§ 3621–27.

both *The Tennessean* and *The Nashville Banner* adjusted their publication schedules in an effort to qualify their respective "Plus" issues for second-class rates in light of DMCS 200.0123. In essence, both publications reorganized their schedules so that their respective "Plus" issues would not be published "on the same day as another regular issue of the same publication" and, therefore, would not be deemed a "separate publication" under DMCS 200.0123. Although the USPS initially contested the second-class eligibility of these newly reorganized "Plus" issues and charged both publications third-class rates, it ultimately recognized that these issues were eligible for second-class rates under DMCS 200.-0123 and refunded the excess postage previously paid by both publications.

On July 15, 1986, apparently unhappy with the ability of various publications to avoid what it believed was the true intent of DMCS 200.0123, the USPS published for comment in the Federal Register an interim rule which amended the Domestic Mail Manual (DMM). The DMM is a detailed set of administrative regulations governing the USPS' domestic mail services. The USPS amended the DMM by adding a section defining when an "issue" of a newspaper would be deemed a "separate publication" for postal purposes. The proposed amendment, interim DMM § 425.226, provided:

> An "issue" of a newspaper ... shall also be deemed to be a separate publication ... when ...:
>
> a. The issue is published at a regular frequency, such as once a week, *and*
>
> b. more than 10 percent of the total number of copies of the issue are distributed to [nonsubscribers], *and*
>
> c. the number of copies of the issues distributed through the mails is more than twice the number ... of any other single issue of the parent publication distributed through the mails during the same week.

51 Fed.Reg. 25,526 (July 15, 1986). This interim rule, which became effective on July 20, 1986, applied to any issue of a publication meeting certain numerosity criteria *regardless of whether it was published on the same day as another issue of the same publication.* Consequently, interim DMM § 425.226 acted to disqualify plaintiffs' newly reorganized "Plus" issues from second-class eligibility and effectively required plaintiffs to pay third or fourth-class mailing rates.

On August 21, 1986, four newspapers, including *The Nashville Banner* and *The Tennessean,* filed a section 3662 complaint with the PRC (*Advo II*), claiming that the USPS violated 39 U.S.C. § 3623 by adopting interim DMM § 425.226 and thereby changing DMCS in the absence of a Recommended Decision from the PRC. The complaint asked the PRC to issue a Recommended Decision invalidating the interim rule as an unauthorized reclassification.[5]

On September 22, 1986, after receiving and considering fourteen public comments concerning interim DMM § 425.226, the USPS published and adopted the following final rule:

> An "issue" of a newspaper ... shall also be deemed to be a separate publication ... when ...:
>
> a. the "issue" is published at a regular frequency, such as once a week, *but not on the same day as another regular "issue" of the same publication,* and
>
> b. more than 10 percent of the total number of copies of the "issue" are distributed on a regular basis, more frequently than once each month, to [nonsubscribers], and
>
> c. the number of copies of the "issue" distributed to nonsubscribers is more than twice the number of any other regular issue distributed to nonsubscribers during the same week.

51 Fed.Reg. 33,610 (September 22, 1986) (emphasis added). Like interim DMM § 425.226, final DMM § 425.226 effectively disqualified plaintiffs' "Plus" issues from second-class eligibility. Final DMM § 425.226, however, is not, by its terms, applicable to "Plus" issues published on the same day as another regular issue of the

5. After the USPS adopted the final version of DMM § 425.226, complainants amended their section 3662 complaint to challenge the final version also.

same publication and, therefore, is facially inconsistent with DMCS 200.0123.[6]

On the same day as it published and adopted final DMM § 425.226, the USPS moved to dismiss plaintiffs *et al.*'s section 3662 complaint both on its merits and on procedural grounds. Regarding the merits of the complaint, the USPS argued that because DMCS 200.0123 was not a "reclassification," but an interpretive rule "designed to avoid misinterpretations and preserve the [then] existing classification scheme" *without limiting the USPS' power to preserve that scheme,* both the interim and final versions of DMM § 425.226 must be construed as interpretations of the classification schedule. In denying the USPS' motion, the PRC rejected this argument, holding instead that DMCS 200.0123 "did not merely interpret existing classification provisions: it added to them by recognizing a new variety of mail matter and enacting a new rule for its treatment." Although the PRC agreed to make further inquiry into the adequacy of existing DMCS provisions, it refused to consider whether the USPS' interim or final rule was unlawful, *ultra vires,* or void. Noting that such a challenge would not be exempted by 39 U.S.C. § 3628 from 39 U.S.C. § 409(a)'s general grant of jurisdiction, the PRC concluded that "the right forum for determining the validity of a [USPS] rule, purportedly issued under its independent administrative powers, would be a United States District Court." According to the PRC, federal district courts had heard complaints that the USPS has "classified mail without invoking PRC procedures on several occasions" in the past.[7] Pursuant to the PRC's suggestion, plaintiffs filed this lawsuit on March 16, 1987.

### III. *Legal Discussion*

#### A. Does the Court Have Authority to Entertain Plaintiffs' Claim?

As a preliminary matter, this lawsuit presents a rather difficult and novel ques-

tion concerning the proper role of federal district courts under the Postal Reorganization Act of 1970. As discussed earlier in this Memorandum, plaintiffs contend that the USPS exceeded its statutory authority by promulgating an administrative regulation that effectively amended the DMCS in total disregard of the Act's comprehensive reclassification procedure. According to plaintiffs, the Court has subject-matter jurisdiction over this case pursuant to both 28 U.S.C. § 1339 and 39 U.S.C. § 409(a). 28 U.S.C. § 1339 provides:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service

28 U.S.C. § 1339 (1976). 39 U.S.C. § 409(a) provides:

> Except as provided in section 3628 ... the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the [USPS].

39 U.S.C. § 409(a) (1980).

The Court agrees that these statutory provisions vest federal district courts with general subject-matter jurisdiction over cases involving the USPS. These same provisions, however, do not, in and of themselves, necessarily entitle this Court to resolve the issues presented in this action. It is axiomatic that "[a]n inquiry into a court's jurisdiction to hear a suit is separate and distinct from consideration of whether the suit raises issues amenable to judicial resolution." *National Ass'n of Postal Supervisors v. United States Postal Service,* 602 F.2d 420, 429 (D.C.Cir.1979) (*NAPS*). Although 28 U.S.C. § 1339 and 39 U.S.C. § 409(a) "remove any barrier that might otherwise exist by reason of the doctrine of sovereign immunity ... [and] permit the [USPS] ... to sue or ... be

---

6. The combination of DMCS 200.0123 and final DMM § 425.226 accomplish what interim DMM § 425.226 did by itself-deny second-class eligibility to "Plus" issues *regardless of whether they are published on the same day as another issue of the same publication.*

7. *See, e.g., National Retired Teachers Ass'n v. United States Postal Service,* 430 F.Supp. 141 (D.D.C.1977) *aff'd,* 593 F.2d 1360 (D.C.Cir.1979) (asserting jurisdiction without comment or challenge by the USPS).

sued," neither statute creates, by its own force, an independent, private cause of action enforceable in federal district courts. *Peoples Gas, Light and Coke Co. v. United States Postal Service*, 658 F.2d 1182, 1189 (7th Cir.1981). *See also NAPS*, 602 F.2d at 429; *Lutz v. United States Postal Service*, 538 F.Supp. 1129, 1132 (E.D.N.Y. 1982).

■ While these jurisdictional statutes do not create a private cause of action to enjoin the USPS from acting in excess of its statutory authority, they nevertheless "trigger" a well-established, common-law presumption favoring judicial review of final administrative action. *See NAPS*, 602 F.2d at 429 (citing *Barlow v. Collins*, 397 U.S. 159, 165, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970)). When this common-law presumption arises, access to judicial review of agency action should not be restricted by the courts unless *the government* demonstrates, by "clear and convincing evidence," that Congress intended such a result. *See Peoples Gas*, 658 F.2d at 1190 (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967)). In the absence of an express statutory command prohibiting judicial oversight, such congressional intent "may be shown by the overall purpose of the [Act] as viewed within the context of the entire legislative scheme." *Peoples Gas*, 658 F.2d at 1190–91. Statutory silence, however, is insufficient, by itself, to compel judicial restraint in the face of this well-established presumption of reviewability. *See* Saferstein, *Nonreviewability: A Functional Analysis of "Committed to Agency Discretion,"* 82 Harv.L.Rev. 367, 379 (1968), *cited with approval in, Peoples Gas*, 658 F.2d at 1190 n. 4.

Relying primarily upon *Tedesco v. United States Postal Service*, 553 F.Supp. 1387 (W.D.Pa.1983) and *Shelby Resources, Inc. v. United States Postal Service*, 619 F.Supp. 1546 (S.D.N.Y.1985), the USPS ar-

gues that 39 U.S.C. § 3628's exclusive judicial review provision, when read in conjunction with 39 U.S.C. § 3662's complaint procedure, provides the sole mechanism for challenging regulatory mail classification and rate changes. Section 3628, however, is simply inapplicable to this case. By its terms, section 3628 applies only to "[a] decision of the Governors to approve, allow under protest, or modify [a] recommended decision of the [PRC]." In the present case, the PRC has not issued, nor have the Governors approved, allowed under protest, or modified, a recommended decision concerning the validity of DMM § 425.226. In fact, the PRC has expressly refused to entertain such a claim, holding instead that the proper forum for resolving such a dispute is a federal district court. Although the USPS has shown by "clear and convincing evidence" that Congress intended to preclude district court review of decisions made by the Governors to approve, allow under protest, or modify recommended decisions of the PRC, *accord The Enterprise, Inc.*, 774 F.2d at 161, it has failed to produce any evidence of a congressional intent to preclude district court review of claims alleging that the USPS has acted in excess of its authority under the Act. As the United States Court of Appeals for the D.C. Circuit noted in *NAPS:*

> The judicial role is to determine the extent of the agency's delegated authority and then determine whether the agency has acted within that authority. In this as in other settings, courts owe a measure of deference to the agency's own construction of its organic statute, but the ultimate responsibility for determining the bounds of administrative discretion is judicial.

*NAPS*, 602 F.2d at 432–33 (citations omitted). Because the Court finds that the USPS has not sufficiently rebutted the common-law presumption of reviewability, the Court concludes that it may proceed to consider the validity of DMM § 425.226.[8]

---

**8.** Alternatively, the Court finds that it has jurisdiction to enjoin the USPS from enforcing DMM § 425.226 under the doctrine articulated in *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) and *Oestereich v. Selective*

*Service System*, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). *See United Parcel Service, Inc. v. United States Postal Service*, 524 F.Supp. 1235, 1243–47 (D.Del.1981) (recognizing doctrine as basis for jurisdiction but denying appli-

**B. Does The Nashville Banner Have Standing to Bring this Action?**

The USPS next contends that plaintiff The Nashville Banner Publishing Company (*The Nashville Banner*) lacks standing to bring this action because its "Plus" issue would fail to qualify for second-class rates, even in the absence of DMM § 425.226. Specifically, the USPS argues that *The Nashville Banner* NEIGHBORHOOD is not eligible for second-class rates under DMM § 411.4 [9] because copies sent to non-subscribers are not commingled with copies *mailed* to identifiable subscribers. According to the USPS, "[i]t is only by chance that a ... subscriber would ever get a copy of [*The Nashville Banner* NEIGHBORHOOD]" through the mail.

The question of standing focuses upon whether a party has alleged "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends...." *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). Such a personal stake exists where the party has suffered some actual or threatened injury as a result of the allegedly unlawful conduct. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–72, 102 S.Ct. 752, 758, 70 L.Ed.2d 700, 102 S.Ct. 752 (1982). Here, the Court agrees with plaintiffs that dismissing *The Nashville Banner* from this action solely because it is statistically *possible* that no single subscriber was *mailed The Nashville Banner* NEIGHBORHOOD during a particular week would be "beyond logic and reason." *The Nashville Banner* has clearly demonstrated that several of its subscribers regularly receive copies of *The Nashville Banner* NEIGHBORHOOD in the mail. *The Nashville Banner* NEIGHBORHOOD, therefore, was, at least on one occasion, commingled with "Plus" issues mailed to subscribers, and thus qualified for second-class rates under DMM § 411.4. Had it not been for DMM § 425.226, *The Nashville Banner* could have mailed those issues at second-class rates. Instead, DMM § 425.226 rendered those issues "separate publications" and effectively required *The Nashville Banner* to pay third-class rates. Consequently, the Court concludes that *The Nashville Banner* was injured as a result of the USPS' allegedly unlawful conduct and has standing to bring this action.[10]

**C. Did the USPS Exceed Its Authority Under the Act By Promulgating DMM § 425.226?**

Under the Act, any change in the DMCS which is not made pursuant to a recommendation by the PRC in accordance with the reclassification procedure set forth in 39 U.S.C. § 3623 is invalid. *See National Retired Teachers Ass'n v. United States Postal Service*, 430 F.Supp. 141, 146 (D.D.C.1977), *aff'd*, 593 F.2d 1360, 1363 (D.C.Cir. 1979). The PRC, however, "does not have exclusive jurisdiction of all matters touching on mail classifications." *Retired Teachers*, 593 F.2d at 1363. The USPS retains "a residuum of authority to interpret mail classifications in the process of implementing them, so long as that interpretation does not effect a substantive change in the types of mail or the identity

---

cability in that case). *See generally*, K. Davis, 4 *Administrative Law Treatise* 426–27 (2d ed. 1983) ("No case law is necessary to support the obvious proposition that a district court under [28 U.S.C. § 1331] may enjoin a federal agency from acting in excess of its statutory ... authority."). In the present case, plaintiffs have shown both: (1) that the statutorily-provided review procedures [sections 3662 and 3628] are inadequate; and (2) that the USPS clearly acted in excess of its statutory authority by promulgating DMM § 425.226.

9. DMM § 411.41 provides, in part: "Copies of publications which are not commingled and presorted as subscriber or requester copies may not be mailed at the second-class rates set forth above."

10. Because the Court denies plaintiffs' request for a postage refund, it will not be necessary to determine whether, in fact, any particular issue of *The Nashville Banner* NEIGHBORHOOD was not commingled with copies sent to subscribers.

of mailers encompassed within the classification." *Id.*

In the present case, the USPS contends that DMM § 425.226 does not represent a change in mail classification, but rather an interpretation of DMCS 200.0123. Under the Act, a mail classification is "a 'grouping' of mailing matter for the purpose of assigning it a specific rate or method of handling." *Retired Teachers*, 430 F.Supp. at 146. *See also United Parcel Service, Inc. v. United States Postal Service*, 604 F.2d 1370, 1376 (3d Cir.1979) (quoting *Retired Teachers*). Relevant factors in defining mail classifications include "size, weight, content, ease of handling, and identity of both posting party and recipient." *Retired Teachers*, 430 F.Supp. at 147.

■ It is patently clear to the Court that both the interim and final versions of DMM § 425.226 were more than mere interpretations of DMCS 200.0123. Instead, both versions effectively altered the DMCS by expanding the scope of DMCS 200.0123 to include an additional variety of "Plus" issue—those that are *not* published on the same day as another issue of the same publication—and consequently an additional class of mailers-publishers of *nondaily* newspapers. In *Advo I*, the PRC expressly recognized that the applicability of DMCS 200.0123 was limited to daily newspapers and to "Plus" issues that were published on the same day as another issue of the same publication. Since the adoption of DMCS 200.0123, the PRC has reaffirmed this limitation, noting that DMC 200.0123 "dealt only with one variety of Plus issue," *Advo II* at 9 n. 6, and one class of mailers-publishers of *daily* newspapers. Because both versions of DMM § 425.226 substantively changed the type of mailing matter and identity of mailers encompassed within DMCS 200.0123, promulgation of both versions constituted acts of mail classification

requiring PRC action. The USPS, however, bypassed the Act's exclusive reclassification procedure and changed the DMCS through the promulgation of an administrative regulation. In doing so, the USPS circumvented the PRC's role in the classification process and clearly exceeded its statutory authority.[11] DMM § 425.226, therefore, is invalid.

### D. Are Plaintiffs Entitled to a Postage Refund?

■ In 39 U.S.C. § 3681, Congress provided that "[n]o mailer may be reimbursed for any amount paid under any rate or fee which, after such payment, is determined to have been unlawful after proceedings in accordance with the provisions of section 3628...." Congress, therefore, "weighed the potential harm to ratepayers caused by excessive postal rates against the potential harm to the [USPS] caused by refunding the overpayments, and struck the balance, in section 3681, in favor of the [USPS]." *United Parcel*, 524 F.Supp. at 1246. Although plaintiffs correctly note that this case "is not about the legality or illegality of a classification that has been recommended by the PRC and approved by the Governors," and thus does not involve any judicial review under section 3628, the Court has found nothing in the general scheme or legislative history of the Act "to indicate that Congress did not intend this limitation to apply when agency action is challenged as *ultra vires* rather than substantively unsound or procedurally irregular." *Id.* In fact, the underlying policy rationale of section 3681—to avoid voluminous controversies that could seriously disrupt the provision of postal services—applies with equal force to both section 3628 proceedings and federal district court proceedings in which the USPS is charged with exceeding its statutory authority. For these reasons, plaintiffs are not enti-

---

**11.** It is important to recognize the distinction between the *policies* underlying second class eligibility which were articulated in *Advo I* and the *document* describing the mail eligible for second-class rates-the DMCS. By holding DMM § 425.226 invalid, the Court does not condone or sanction plaintiffs' activities. Plaintiffs' newly reorganized "Plus" issues may, in fact, violate

the *policies* articulated in *Advo I.* The Court here holds only that DMCS 200.0123 did not address itself to "Plus" issues that do not appear on the same day as another issue of the same publication, and that any attempt to extend the DMCS to cover such issues must be made in accordance with the statutory reclassification procedure outlined in 39 U.S.C. § 3623.

tled to a refund of all excess postage paid during the time DMM § 425.226 was in effect.[12]

### IV. *Conclusion*

For the reasons set forth above, the Court grants plaintiffs' motion for summary judgment in part and orders that judgment be entered in plaintiffs' favor for:

1. A declaration that DMM § 425.226 is unlawful to the extent that it modifies the existing DMCS; and

2. An injunction requiring the USPS to carry *The Sunday Tennessean* FOCUS and *The Nashville Banner* NEIGHBORHOOD at second-class rates in accordance with DMCS 200.0123.

Plaintiffs' request for a postage refund, however, is hereby denied.

---

12. DMM § 147.2 does not, as plaintiffs suggest, *require* the USPS to make refunds of postage paid in excess of lawful rates. The Court agrees with the USPS that DMM § 147.2 merely permits the USPS to refund postage where it has failed to provide service or collected an incorrect amount.