**DOW JONES & COMPANY, INC., Petitioner,**

v.

**UNITED STATES POSTAL SERVICE and United States of America, Respondents,**

Time Incorporated, Newsweek, Inc., Samuel C. Pennington, American Newspaper Publishers Ass'n, Direct Mail/Marketing Ass'n, Inc., American Business Press, Reader's Digest Association, Inc., Intervenors.

**NEWSWEEK, INC., Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent,**

Time, Incorporated, Dow Jones & Company, Inc., American Newspaper Publishers Ass'n, Direct Mail/Marketing Ass'n, Inc., American Business Press, Reader's Digest Association, Inc., Intervenors.

**NEWSWEEK, INC., Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent,**

Time Incorporated, Reader's Digest Association, Inc., Intervenors.

**READER'S DIGEST ASSOCIATION, INC., Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent,**

Dow Jones & Company, Inc., American Business Press, Time Incorporated, Newsweek, Inc., Intervenors.

**TIME INCORPORATED, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent,**

Newsweek, Inc., American Business Press, Inc., Dow Jones & Company, Inc., Reader's Digest Association, Inc., Intervenors.

---

READER'S DIGEST ASSOCIATION,
INC., Appellant,

v.

UNITED STATES POSTAL SERVICE,
et al., Appellees.

Nos. 80–2285 to 80–2289, 80–2300.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 23, 1981.

Decided May 22, 1981.

Timothy J. May, Washington, D. C., with whom David C. Todd and Steven M. Schneebaum, Washington, D. C., were on the brief for Reader's Digest Association, Inc., petitioner in Nos. 80–2288 and 80–2300 and intervenor in Nos. 80–2285, 80–2286, 80–2287 and 80–2289.

Raymond N. Shibley, Washington, D. C., with whom M. Reamy Ancarrow, W. Gilbert Faulk, Jr., and W. Terry Maguire, Washington, D. C., were on the brief for Dow Jones & Co., Inc., petitioner in No. 80–2285, appellee in No. 80–2300 and Dow Jones & Co., Inc., et al. intervenors in Nos. 80–2286, 80–2288 and 80–2289. Paula A. Jameson, New York City, for Dow Jones & Co., Inc.

Justin R. Wolf, Louise C. Powell and George H. Rothschild, Jr., Washington, D. C., were on the brief for Time, Inc., petitioner in No. 80–2289 and appellee in No. 80–2300, intervenor in Nos. 80–2285, 80–2286, 80–2287 and 80–2288.

Toni K. Allen, Jay A. Resnick, Stephen M. Truitt and Daniel H. Squire, Washington, D. C., were on the brief for Newsweek, Inc., petitioner in Nos. 80–2286 and 80–2287 and appellee in No. 80–2300, and intervenor in Nos. 80–2285, 80–2288 and 80–2289.

Frances G. Beck, Asst. Gen. Counsel, U. S. Postal Service, Washington, D. C., with whom Louis A. Cox, Gen. Counsel, Daniel J. Foucheaux, Jr., Eric P. Koetting and Gerald J. Robinson, U. S. Postal Service, Wash-

788

ington, D. C., were on the brief for respondent/appellee.

David R. Straus, Robert C. McDiarmid and Patricia E. Stack, Spiegel & McDiarmid, Washington, D. C., were on the brief for Samuel C. Pennington, intervenor in No. 80–2285.

Dana T. Ackerly and David K. Flynn, Washington, D. C., were on the brief for Direct Mail/Marketing Association, Inc., intervenor in Nos. 80–2285 and 80–2286.

Robert A. Saltzstein, Washington, D. C., for American Business Press, intervenor in Nos. 80–2285, 80–2286, 80–2288 and 80–2289.

Before ROBB, WILKEY and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROBB.

ROBB, Circuit Judge:

This is an appeal from a decision of the Governors of the United States Postal Service (USPS) concerning the sub-classifications and rates applicable to second-class mail. The issue presented is whether the rates approved by the Governors were established through a procedure violative of the Postal Reorganization Act, Pub.L. No. 91–375, 84 Stat. 719 (1970), codified at 39 U.S.C. § 101 *et seq.* (1976) (the Act). We hold that the ratemaking in this case violates 39 U.S.C. § 3622(a) (1976). Accordingly, the decision of the Governors is void in its entirety. 39 U.S.C. § 3628 (1976).

I.

Since 1924 the USPS has offered special service termed "red-tag" for mail intended to receive expedited delivery within the second-class classification. 45 *The Postal Bulletin* 1 (1924). Red-tag treatment is currently available to publications issued weekly or more often and of general public interest. *Domestic Mail Manual* § 432.1 and .2 (1979). Expedited treatment of red-tag mail is an aspiration rather than a guarantee; the service is provided only "insofar as is practicable." *Id.* There is no separate

classification within the Domestic Mail Classification Schedule (DMCS) for red-tag mail, nor is there a surcharge above normal second-class rates for the expedited delivery.

On January 10, 1979 the Postal Rate Commission (PRC), acting pursuant to its authority under 39 U.S.C. § 3623(b) (1976) to initiate mail classification proceedings, commenced the "Red Tag Proceeding, 1979" (Commission Docket No. MC79–3) which forms the basis of the Governors' decision under review. The order announcing the proceeding stated that both ratemaking and classification would be the objectives of the rulemaking:

> The evidentiary record to be established in this proceeding will provide the basis for a recommended decision on a possible surcharge for red-tag second-class service (or, equivalently, on a discount for non-red-tag second-class service).

Order No. 228, 44 Fed.Reg. at 2211, col. 3 (1979) [Footnote omitted]. Interested parties filed a "Motion to Dismiss Proceedings" with the PRC on February 8, 1979. These parties contended that the unilateral initiation of a ratemaking proceeding by the PRC is unauthorized under the Act because 39 U.S.C. § 3622(a) states that rate change requests may originate only with the Postal Service. Following denial of this motion by the PRC (Order No. 229), Dow Jones & Co., Inc., unsuccessfully sought a court injunction against conduct of the Red Tag Proceeding on the ground that it was unlawfully instituted. *Dow Jones & Co. v. Postal Rate Comm'n,* 471 F.Supp. 455 (D.D.C.1979). The District Court denied the injunction because it was not certain that the Red Tag Proceeding would culminate in a rate order, but it stated that appellate review of the alleged statutory violation would be appropriate if a rate order did result. *Id.,* at 456–57. It is significant that the Postal Service opposed any ratemaking in the Red Tag Proceeding. (J.A. at 659, 670, 688)

On May 16, 1980 the PRC issued an "Opinion and Recommended Decision" proposing that the Governors of the Postal Service establish (1) a separate red-tag sub-

class and (2) a rate surcharge for red-tag mail of 2.3 cents above normal second-class rates. (J.A. at 725) The surcharge was based on a proposed rate decrease of 1.1 cents per piece of non-red-tag mail and a proposed rate increase of 1.2 cents per piece of red-tag mail. *Id.* Two members of the PRC dissented from the proposed rate change, noting that the PRC "clearly lacks authority to recommend any rate change in this proceeding . . . ." (J.A. at 834) The decision of the Governors of the Postal Service, issued on August 15, 1980, adopted the recommended decision of the PRC. (J.A. at 841–848) An effective date of June 1, 1981 was set for the new red-tag classification and rates. (Resolution No. 80–6, J.A. at 849) [1] This appeal from the Governors' decision followed immediately thereafter.

## II.

The Postal Reorganization Act sets forth separate procedures for mail classification and ratemaking. Changes in the mail classification schedule, which are governed by 39 U.S.C. § 3623(b) of the Act, may be requested by either the Postal Service or by the PRC:

§ 3623.  Mail classification

\*      \*      \*      \*      \*      \*

(b) Following the establishment of the mail classification schedule requested under subsection (a) of this section, the Postal Service may from time to time request that the Commission submit, or the Commission may submit to the Governors on its own initiative, a recommended decision on changes in the mail classification schedule.

Requests for rate changes, which are governed by 39 U.S.C. § 3622(a) of the Act, may be initiated only by the Postal Service. The PRC may not recommend a rate change of its own motion:

§ 3622.  Rates and fees

(a) From time to time the Postal Service shall request the Postal Rate Commission to submit a recommended decision on changes in a rate or rates of postage or in a fee or fees for postal services if the Postal Service determines that such changes would be in the public interest and in accordance with the policies of this title. The Postal Service may submit such suggestions for rate adjustments as it deems suitable.

Following compliance with the above procedures, the PRC holds hearings on the proposed changes in conformance with sections 556 and 557 of Title 5, United States Code. 39 U.S.C. § 3624(a) (1976). The PRC then submits its recommended decision to the Governors of the Postal Service (39 U.S.C. § 3624(d)), who may approve it, allow it under protest, reject it, or in certain circumstances, modify it. 39 U.S.C. § 3625 (1976). A decision of the Governors may be appealed to any federal court of appeals. The Act states that the "court may affirm the decision or order that the entire matter be returned for further consideration, but the court may not modify the decision." 39 U.S.C. § 3628 (1976).

The Red Tag Proceeding was initiated by the PRC, without any request from the Postal Service, as a mail classification matter pursuant to 39 U.S.C. § 3623(b). It was apparent from the outset that the PRC would likely recommend a rate change. 44 *Fed.Reg.* at 2211, col. 3 (1979). When Dow Jones sought a court injunction against the proceeding on the ground that it was unlawfully instituted, the district judge noted on the record that any rate order issuing from the proceeding would be "an illegal order" because "there has to be a rate proceeding initiated by the Postal Service [rather than by the PRC]." *Dow Jones & Co. v. Postal Rate Comm'n, supra* (Tr. at 25). Rate and classification proposals resulted from the proceeding, and both proposals were adopted by the Governors in their decision. (J.A. at 841).

---

1. Resolution No. 80–6 was rescinded by the Board of Governors on May 4, 1981 and the effective date of June 1, 1981 was "deferred until the Postal Rate Commission can consider and render a recommended Decision upon a new Red Tag filing, which will be initiated by the Board of Governors of the Postal Service within 60 days." (Resolution No. 81–7 of the Board of Governors of the United States Postal Service (May 4, 1981)).

■ All parties to this action concede that the ratemaking at issue is unauthorized by the Act. *See, e. g.,* Brief of the Reader's Digest Association, Inc., at 8e; Brief of the United States Postal Service, at 18. At oral argument counsel for the Service, in response to the question whether the rate order was a violation of the Act, replied "absolutely." In 39 U.S.C. § 3622(a) of the Act Congress made the deliberate decision to confer rate origination authority solely upon the Postal Service. As the Dissenting Commissioners observed in the opinion of the PRC:

> Congress never intended this Commission to originate rates with its classification proposals. Had it done so, it would have openly authorized it and provided the statutory tools necessary for such a formidable task.

(J.A. at 835) Because the Postal Service did not request, indeed opposed, the rate change which was approved in the decision under review, this court need inquire no further to find the Governors' decision fatally defective.

■ Two arguments in support of the ratemaking merit brief attention. First, Reader's Digest Association, Inc. asserts that classification and rate issues invariably overlap and that in the circumstances of this case the Governors would not have approved a red-tag classification unaccompanied by rate changes. Therefore, it is argued, a reasonable construction of the PRC's classification authority under 39 U.S.C. § 3623(b) should include the authority to recommend rate changes without a prior request from the Postal Service. (Br. of the Reader's Digest Association, Inc. at 9–34) This argument fails, given the clear statutory distinction between classification and ratemaking procedures as well as the reasons therefor. This court has previously stated that "[a]lthough . . . mail classification and postal rate issues are often intertwined, the Act establishes separate, though parallel, procedures for considering each of them." *National Ass'n of Greeting Card Publishers v. USPS,* 197 U.S.App.D.C. 78, 98, 607 F.2d 392, 412 (1979), *cert. denied,*

444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980) (*"NAGCP III"*) [Footnote omitted]. Congress had compelling reasons for conferring authority to request rate changes upon the Postal Service alone. The PRC does not possess the Postal Service's command of the cost, revenue, and volume information which is crucial to rate matters, nor is the PRC responsible for operating within a requested budget. As we noted in *Ass'n of American Publishers, Inc. v. Governors of the USPS,* 157 U.S.App.D.C. 397, 408, 485 F.2d 768, 779 (1973):

> Postal Service staff is in a unique position. It alone takes in the full scope of Postal Service operations when presenting its proposals. And it alone is in a position to influence the Postal Service's day-to-day accounting procedures and record keeping.
>
> \* \* \* \* \* \*
>
> Congress meant the Postal Service to structure its own process for preparing such [rate] proposals so that there would be at least a rough correspondence between the amount of money it would discretionarily allocate and the care with which it prepared and supported those proposals.

When confronted by clear statutory language and congressional intent, it is not for this court to construe 39 U.S.C. § 3623(b) to permit that which it obviously prohibits.

■ Second, the USPS asserted at oral argument that "special circumstances" exist which justify the statutory violation. The USPS says this court sanctioned such rate proposals by its expressed support for consolidated treatment of all red-tag matters in two previous decisions. *NAGCP III, supra,* and *Pennington v. USPS,* 201 U.S.App. D.C. 75, 627 F.2d 534 (1980), *reh. denied,* July 24, 1980. In *NAGCP III,* we rejected a Governors' ratemaking decision and the costing methodologies employed by the PRC. We noted, in passing:

> While it is feasible, and perhaps desirable, to consolidate the consideration of classification and rate issues where appropriate, the PRC did not act arbitrarily in choosing to explore this matter [rate discrimination within the second-class cate-

gory] in the context of classification proceedings. We therefore defer to the PRC's pending [Red Tag] proceedings where the issue will receive further analysis, with this court's concern [regarding rate discrimination] in mind.

197 U.S.App.D.C. at 98, 607 F.2d at 412 [Footnotes omitted]. In the *Pennington* case a non-red-tag second-class mailer alleged that the identity of rates between red-tag and non-red-tag mail constituted unlawful rate discrimination. We again deferred to the pending Red Tag Proceeding as "the proper forum in which to resolve questions concerning red-tag service." 627 F.2d at 539. Both cases cited by USPS as support for the rate order before us, in short, simply evidence this court's approval of consolidated treatment of all red-tag related matters in the Red Tag Proceeding. The court did not suggest that statutory procedures for issuing rate change proposals may be ignored. A valid rate change proposal may not issue from a classification proceeding in the absence of a rate request from the Postal Service.

In this case it would have been quite easy to comply with applicable procedures. The PRC could have convened a separate proceeding, subsequent to the Red Tag Proceeding and at the request of the Postal Service, to establish rate proposals for red-tag matter. Alternatively, the rate change proposals for red-tag could have issued from the Docket No. R80–1 rate proceeding which continued after the completion of the Red Tag Proceeding.

Because the rates approved in the Governors' decision were established in violation of 39 U.S.C. § 3622(a) of the Act, we declare the decision to be void in its entirety and remand the matter to the Governors for further proceedings not inconsistent with this opinion.[2]

*So ordered.*

---

**2.** This court need not address the alleged absence of substantial evidence in the record to support the rate surcharge and the alleged insufficiency of the rate decrease for non-red-tag second-class mail. With regard to the controversy which has surrounded the use by the PRC of the service-related costs concept as a basis for allocating costs attributable to red-tag service, we note in passing that this concept has been repudiated by the Governors in their decision of March 10, 1981 concerning Docket No. R80–1. Decision of the Governors of the United States Postal Service on Rates of Postage and Fees for Postal Services, March 10, 1981, at 8, 14–15. This repudiation was fore-shadowed in the decision under review here where the Governors noted that "we do not intend to continue the concept of service-related costs as an element of postal rate determination." (J.A. at 843)

Our decision today renders moot the appeal from the District Court's decision in *Reader's Digest Ass'n, Inc. v. USPS, et al.*, 501 F.Supp. 126 (D.D.C.1980), where it was held that the District Court lacked jurisdiction under the Act to issue an injunction compelling the Postal Service to implement the new rates for second-class mail prior to the then effective date of June 1, 1981. (J.A. at 49–50)