**COMBINED COMMUNICATIONS CORPORATION; Nashville Banner Publishing Company, Plaintiffs–Appellants Cross–Appellees,**

v.

**UNITED STATES POSTAL SERVICE, Defendant–Appellee Cross–Appellant.**

Nos. 88–5817, 88–5819.

United States Court of Appeals, Sixth Circuit.

Argued March 31, 1989.

Decided Dec. 15, 1989.

William R. Willis, Jr., Willis & Knight, Nashville, Tenn., Timothy J. May, David C. Todd (argued), David J. Farber, Patton, Boggs & Blow, Washington, D.C., Lawrence J. Aldrich, Gannett Co., Inc., Arlington, Va., Alan Marx, King & Ballow, Nashville, Tenn., for plaintiffs-appellants cross-appellees.

John L. DeWeerdt (argued), Asst. Gen. Counsel, U.S. Postal Service, Washington, D.C., Joe B. Brown, U.S. Atty., James C. Thomason, III, Asst. U.S. Atty., Nashville, Tenn., Grayson M. Poats, Assoc. Gen. Counsel, Joseph F. Wackerman, U.S. Postal Service, Washington, D.C., for defendant-appellee cross-appellant.

Before MARTIN, KRUPANSKY and MILBURN, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Combined Communications Corp. and the Nashville Banner Publishing Co. appeal the judgment of the district court denying them a postal refund for the payment of third-class rates for second-class mail. The United States Postal Service appeals the judgment of the district court finding its promulgation and implementation of Domestic Mail Manual § 425.226 to be an *ultra vires* act. For the reasons stated below we affirm the judgment of the district court.

## I. FACTUAL BACKGROUND

In 1986 Combined Communications Corp., a subsidiary of Gannett Co., Inc., published a newspaper, *The Tennessean*, seven days a week with two issues on Wednesday. Also during this time, the Nashville Banner Publishing Co. published its newspaper, *The Nashville Banner*, six days a week with two issues on Wednesday. The second issue for each paper on Wednesday was a "Plus" issue of the newspaper. A "Plus" issue is a market coverage publication which consists almost entirely of advertising. Combined Communications and Nashville Banner Publishing distributed these "Plus" issues to nonsubscribers through use of the Postal Service's second-class mail rates. Second-class provides lower rates, better service and more prestige than do classes of a greater number.

Classification of mail items within the various postage rates is determined by the procedures established by Congress under the Postal Reorganization Act of 1970, 39 U.S.C. § 101 *et seq.* This legislation created the United States Postal Service as an independent establishment of the executive branch of government with broad statutory powers. Congress provided for these pow-

ers to be directed by an eleven member Board of Governors. *See* 39 U.S.C. § 202. Although ultimate authority for ratemaking and mail classification is vested in the Board, 39 U.S.C. § 3621, the primary responsibility for establishing classifications and rates rests with the Postal Rate Commission. *See* 39 U.S.C. §§ 3601–3604.

■ The Postal Rate Commission, like the Service, is an independent establishment of the executive branch. Congress intended the Commission to be both fully independent of the Board and an integral part of the Service. Congress achieved a balance between these conflicting goals in the comprehensive ratemaking and classification procedures articulated in the statute. *See* 39 U.S.C. §§ 3621–3625. Under these procedures, the Postal Service may request the Postal Rate Commission to submit, or the Commission may submit of its own accord a recommended decision concerning changes in the classification of mail to the Board of Governors. *See* 39 U.S.C. § 3623. Such a recommended decision may follow the disposition of a complaint filed by a party who believes that the Service is incorrectly charging rates for some postage. *See* 39 U.S.C. § 3662. Regardless of the impetus for a recommendation, the Commission may not recommend a decision to the Board until an opportunity for a hearing on the record is held in compliance with §§ 556–557 of the Administrative Procedure Act, 5 U.S.C. §§ 556–557. *See* 39 U.S.C. §§ 3624, 3662. The Board may approve the Commission's recommendation, allow it under protest, reject it or modify it. 39 U.S.C. § 3625. The various classifications of mail are codified in the Domestic Mail Classification Schedule found at 39 C.F.R. § 3001, Subpt. C, App. A. A decision by the Board may ultimately be appealed to the appropriate United States Court of Appeals. *See* 39 U.S.C. § 3628.

On December 27, 1984, Advo–System Inc., a large volume mailer of third-class bulk mail, filed a complaint with the Commission pursuant to 29 U.S.C. § 3662. Advo asked the Commission to review the rates charged to newspapers for mailing "Plus" issues to non-subscribers at second-

class rates. Following an administrative hearing, the Commission concluded that "Plus" issues were not properly characterized as issues of daily newspapers and that they must independently qualify for second-class rates. In its recommended decision to the Board, the Commission proposed the addition of § 200.0123 to the Domestic Mail Classification Schedule. On March 3, 1986, the Board approved this recommendation. It provides:

> For purposes of determining second-class eligibility and postage ... an "issue" of a newspaper or other periodical shall be deemed a separate publication if:
>
> a. It is published at a regular frequency on the same day as another regular issue of the same publication, and
>
> b. It is distributed to more than (i) 10 percent nonsubscribers, or (ii) twice as many nonsubscribers as the other issue on that same day, whichever is greater. Such separate publications must independently meet the qualifications in section 200.0101 through 200.0109, or 200.0110.

39 C.F.R. § 3001, Subpt. C, App. A, § 200.0123 (1988). Because Domestic Mail Classification Schedule § 200.012 provides that "[p]ublications designed primarily for advertising purposes ... do not qualify for second-class privileges," 39 C.F.R. § 3001, Subpt. C, App. A, § 200.012, "Plus" issues deemed to be separate publications would in all likelihood be denied second-class rates.

To avoid the costly effects of this amendment to the Domestic Mail Classification Schedule, Combined Communications and Nashville Banner Publishing adjusted their publication schedules so that their respective "Plus" issues would not be published on the same day as any regular issue. On June 2, 1986, Combined Communications changed *The Tennessean's* frequency of publication from seven to six days per week. It then established a new publication, *The Sunday Tennessean*, for what used to be *The Tennessean's* Sunday issue. A "Plus" issue of *The Sunday Tennessean* was also published on Wednesday to replace the *The Tennessean's* Wednesday "Plus" issue. Prior to June 2, 1986, *The*

*Nashville Banner* had been published on a Monday through Saturday schedule with two issues on Wednesday, one of which was a "Plus" issue. On June 2, 1986, *The Nashville Banner* became a daily newspaper with its "Plus" issue now published on Sunday instead of Wednesday. Initially, the Service questioned the second-class eligibility of these issues so that the third-class rates were charged for these publications. The Service later recognized that these issues were eligible for second-class rates under Domestic Mail Classification Schedule § 200.0123, and the excess postage paid was refunded.

On July 15, 1986, the Postal Service decided to change this state of affairs. It published for comment in the Federal Register an interim rule amending the Domestic Mail Manual. The Domestic Mail Manual is a detailed set of regulations which interpret and implement the Domestic Mail Classification Schedule and is incorporated by reference in 39 C.F.R. § 111.1. Interim Domestic Mail Manual § 425.226, the proposed amendment, provided:

> An "issue" of a newspaper or other periodical shall also be deemed to be a separate publication ... and must independently meet the applicable second-class eligibility qualifications ... when ...:
> a. The issue is published at a regular frequency, such as once a week, *and*
> b. more than 10 percent of the total number of copies of the issue are distributed to recipients that do not subscribe to it, *and*
> c. the number of copies of the issues distributed through the mails is more than twice the number of copies of any other single issue of the parent publication distributed through the mails during the same week.

51 Fed.Reg. 25,526 (July 15, 1986).

On August 21, 1986, four newspapers, including *The Tennessean* and *The Nashville Banner,* filed a complaint with the Postal Rate Commission. They complained that the Postal Service violated the procedures mandated by 39 U.S.C. § 3623 by effectively changing the Domestic Mail Classification Schedule through interim Domestic Mail Manual § 425.226 without a recommended decision by the Commission.

The Service published and adopted a revised version of Domestic Mail Manual § 425.226 on September 22, 1986. This final version of Domestic Mail Manual § 425.226 provided:

> An "issue" of a newspaper or other periodical shall also be deemed to be a separate publication ... and must independently meet the applicable second-class eligibility qualifications ... when ...:
> a. the "issue" is published at a regular frequency, such as once a week, *but not on the same day as another regular "issue" of the same publication,* and
> b. more than 10 percent of the total number of copies of the "issue" are distributed on a regular basis, more frequently than once each month, to recipients that do not subscribe to it, and
> c. the number of copies of the "issue" distributed to nonsubscribers is more than twice the number of any other regular issue distributed to nonsubscribers during the same week.

51 Fed.Reg. 33,610 (September 22, 1986) (emphasis added). The combined effect of final Domestic Mail Manual § 425.226 and Domestic Mail Classification Schedule § 200.0123 is to deny second-class eligibility to "Plus" issues. Interim Domestic Mail Manual § 425.226 would have achieved this same effect by itself.

The plaintiff newspapers amended their complaint before the Commission to challenge the final version of Domestic Mail Manual § 425.226. On September 22, 1986, the Service moved to dismiss the complaint arguing that Domestic Mail Classification Schedule § 200.0123 was not a reclassification of mail but merely an interpretation of the already existent classification scheme. The Service also argued that Domestic Mail Manual § 425.226 was simply an interpretation of the Domestic Mail Classification Schedule. The commission rejected this argument. The Commission found that Domestic Mail Classification Schedule § 200.0123 was a reclassification of mail. It also found, however, that it lacked subject matter jurisdiction over the question of

whether or not the Service committed an unlawful or *ultra vires* act in adopting either the interim or final version of Domestic Mail Manual § 425.226. The Commission suggested that federal district court was the proper forum for resolving this question. Combined Communications and Nashville Banner Publishing challenged this determination in district court on March 16, 1987.

## II. PROCEEDINGS BELOW

The district court found that it had jurisdiction to decide whether or not the Service exceeded its statutory authority in promulgating a regulation effectively amending the Domestic Mail Classification Schedule, in violation of the procedures mandated in 39 U.S.C. § 3623. *Combined Communications Corp. v. United States Postal Service*, 686 F.Supp. 663, 667–68 (M.D.Tenn. 1988). It found support for this in the general grant of jurisdiction to the federal district courts under 28 U.S.C. § 1339 and 39 U.S.C. § 409(a) for cases involving the Postal Service. *Id.* The court then considered whether this case presented a justiciable cause of action over which it could exercise this jurisdiction. It found that while these general jurisdictional statutes did not create a private cause of action, they did remind the court of "a well-established, common-law presumption favoring judicial review of final administrative action." *Id.* at 668 (citing *National Ass'n of Postal Supervisors v. United States Postal Service*, 195 U.S.App.D.C. 242, 602 F.2d 420, 429 (1979)). The court noted that "access to judicial review of agency action should not be restricted by the courts unless *the government* demonstrates by 'clear and convincing evidence,' that Congress intended such a result." *Id.* (emphasis in original) (citing *People Gas, Light and Coke Co. v. United States Postal Service*, 658 F.2d 1182, 1190 (7th Cir.1981)). The court found no evidence of Congressional intent to restrict such review.[1]

Finally, the district court found that the exclusive grant of jurisdiction to federal courts of appeal provided by 39 U.S.C. § 3628 did not preclude the exercise of its jurisdiction in this case. Section 3628 by its own terms only provides for review, by the appropriate court of appeals, of decisions by the Board of Governors regarding recommendations by the Postal Rate Commission. Domestic Mail Manual § 425.226 did not involve any decision by the Board of Governors.

On the merits, the district court found that the Postal Service exceeded its authority by effecting a reclassification of mail without following the reclassification procedures provided in 39 U.S.C. § 3623. The court found that "any change in the DMCS which is not made pursuant to a recommendation by the [Postal Rate Commission] in accordance with the reclassification procedure set forth in 39 U.S.C. § 3623 is invalid." *Id.* at 669 (citing *National Retired Teachers Ass'n v. United States Postal Service*, 430 F.Supp. 141, 146 (D.D.C.1977), *aff'd.*, 193 U.S.App.D.C. 206, 593 F.2d 1360, 1363 (1979)). The court reasoned that the Service retains the authority to interpret mail classification "so long as that interpretation does not effect a substantive change in the types of mail or identity of mailers encompassed within the classification." *Id.* at 669–70 (quoting *National Retired Teachers Ass'n*, 593 F.2d at 1363). It also found that a "mail classification is a 'grouping' of mailing matter for the purpose of assigning it a specific rate or method of handling." *Id.* at 670 (quoting *National Retired Teachers Ass'n*, 430 F.Supp. at 146).

The court found it "patently clear ... that both the interim and final versions of DMM § 425.226 were more than mere interpretations of DMCS 200.0123." 686 F.Supp. at 670. Both versions of Domestic Mail Manual § 425.226 effectively altered the Domestic Mail Classification Schedule by expanding the scope of Domestic Mail Classification Schedule § 200.0123 to in-

---

**1.** In the alternative, the court found that it had jurisdiction under the doctrine articulated in *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). 686 F.Supp. at 668 n. 8. A federal district court has jurisdiction over a matter under *Kyne* where denial of judicial review would impair a right granted by Congress. 358 U.S. at 189–91, 79 S.Ct. at 184–85.

clude those "Plus" issues not published on the same day as another issue of the same publication. The Postal Service accomplished this by promulgating an administrative regulation and bypassing the reclassification procedure of the Act. This "clearly exceeded its statutory authority." *Id.* (footnote omitted.) The court concluded that this action and Domestic Mail Manual § 425.226 were invalid. *Id.*

Despite this conclusion, the court did not require the Service to reimburse Combined Communications and Nashville Banner Publishing for the excess postage paid for mailing second-class mail at third-class rates. 686 F.Supp. at 670–71. It found guidance for this decision in 39 U.S.C. § 3681 which provides that "[n]o mailer may be reimbursed for any amount paid under any rate or fee which after such payment, is determined to have been unlawful after proceedings in accordance with the provisions of section 3628 . . . ." The court found nothing to indicate that Congress did not intend this limitation to apply to *ultra vires* agency actions. *Id.* at 670 (citing *United Parcel Service v. United States Postal Service*, 524 F.Supp. 1235, 1246 (D.Del.1981)). Consequently, it denied the refund.

### III. JURISDICTION

On appeal, the Postal Service renews its argument that the district court was without jurisdiction to review its administrative regulation. We believe this argument to be without merit.

The Postal Service relies on our opinion in *The Enterprise, Inc. v. Bolger*, 774 F.2d 159 (6th Cir.1985) (per curiam) for this position. In that case, The Enterprise, Inc., the publisher of a weekly newspaper, brought suit against the Postal Service claiming that § 422.21 of the Domestic Mail Manual violated certain rights guaranteed by the first and fifth amendments to the Constitution. It also complained that Domestic Mail Manual § 422.21 violated 39 U.S.C. § 3623(c)(1) which requires the establishment of a fair and equitable mail classification system. *Id.* at 160. Domestic Mail Manual § 422.21 provided that a general

publication must have a legitimate list of paid subscribers in order for the publication to qualify for second-class rates. The Enterprise, Inc. distributed its weekly newspaper to about 16,000 homes in Tennessee free of charge. *Id.* The district court entered a judgment in favor of the paper and awarded it over $77,000 in reimbursement for excess postage paid.

This court reversed holding that the district court was without jurisdiction to review the Domestic Mail Manual. The court agreed that "review of a mail rate or classification decision may be sought only in a direct appeal to a United States Court of Appeals under 39 U.S.C. § 3628." 774 F.2d at 161. The court found support for this conclusion in the legislative history of the Postal Reorganization Act. It found that this history suggested "a Congressional intent that even constitutional questions such as those asserted here should be raised initially at the agency level followed by review of the agency's classification decision in the courts of appeals." *Id.* (citing H.R.Rep. No. 1104, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad. News 3649, 3695). Accordingly, the court vacated the judgment and remanded the case with instructions to dismiss. *Id.* at 162.

We again reviewed the question of the constitutionality of the rates in *The Enterprise, Inc. v. United States*, 833 F.2d 1216 (6th Cir.1987). Following dismissal of its first action in *The Enterprise, Inc. v. Bolger*, 774 F.2d 159 (6th Cir.1985), The Enterprise, Inc. pursued its claims before the Postal Rate Commission. 833 F.2d at 1216. The Commission considered The Enterprise, Inc.'s constitutional challenges to the paid-subscriber rule and found them to be without merit. *Id.* at 1218. The Commission also found that the status of the Enterprise's publication as a "newspaper" was irrelevant to its constitutional analysis. The Commission filed this recommended decision with the Board of Governors who subsequently approved it. *Id.* at 1219. This court reviewed the Board's decision under 39 U.S.C. § 3628 and affirmed on all issues.

Contrary to the assertions of the Postal Service, *The Enterprise* cases do not preclude the exercise of jurisdiction in this case. In *The Enterprise, Inc. v. Bolger*, the plaintiff went directly to district court. The plaintiff did not attempt to bring its grievance before the Postal Rate Commission, nor did it seek to resolve the dispute through administrative channels. The district court lacked jurisdiction over the case and we properly dismissed under the statute. In the second case of *The Enterprise, Inc. v. United States*, the plaintiff sought the review in this court after the Postal Rate Commission filed a recommended decision in the case and the Board of Governors approved it. Exercise of this court's jurisdiction was proper under section 3628 because the appeal followed "[a] decision of the Governors to approve ... the recommended decision of the Postal Rate Commission...." 28 U.S.C. § 3628.

In the present case, contrary to this, the Commission failed to exercise its jurisdiction over the Combined Communications and Nashville Banner Publishing's claim that the Postal Service was without authority to issue or implement Domestic Mail Manual § 425.226. The plaintiffs in the present case did not forgo their administrative remedies. They did not immediately seek relief in district court. Instead, they filed a complaint with the Postal Rate Commission. The Commission found that "the right forum for determining the validity of a Postal Service rule, purportedly issued under its independent administrative powers, would be United States District Court." Postal Rate Commission, Order No. 724 (December 2, 1986) at 11. It also reasoned that because "[n]either the Commission nor the Governors recommended, adopted, or promulgated the rule" there was "no action with respect to the Postal Service rule which could be appealed under § 3628." *Id.* at 13. The Commission concluded that a challenge to Domestic Mail Manual § 425.226 "on the ground that it was ultra vires, would not be exempted by § 3628 from the general grant of jurisdiction in § 409." *Id.* (footnote omitted).

As the Commission noted, this conclusion is in accord with the position of at least two other courts of appeal. *See, e.g., National Retired Teachers Ass'n v. United States Postal Service*, 430 F.Supp. 141 (D.D.C. 1977), *aff'd*, 193 U.S.App.D.C. 206, 593 F.2d 1360 (1979); *United Parcel Service v. United States Postal Service*, 455 F.Supp. 857 (E.D.Pa.1978), *aff'd*, 604 F.2d 1370 (3d Cir.1979), *cert. denied*, 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 815 (1980). In both *National Retired Teachers Ass'n* and *United Parcel Service* the court considered the claim that the Postal Service exceeded its authority by promulgating a regulation which was not an interpretation of the Domestic Mail Classification Schedule, but which effected a change in the classification of mail. Had the court in either case agreed with this claim, the Postal Service action would have been *ultra vires* because the statute provides that only the Board of Governors may change the classification of mail, acting upon the recommended decision of the Postal Rate Commission. *See* 39 U.S.C. §§ 3623, 3625. In neither *National Retired Teachers Ass'n* nor *United Parcel Service* did the district court nor the court of appeals do what the Postal Service urges us to do in the present case, namely, deny jurisdiction over the matter because of the absence of a decision by the Board of Governors acting upon a recommended decision by the Postal Rate Commission. It is the absence of this act which makes the Service's action *ultra vires*.

■ We believe the district court's opinion and the Commission's statement on jurisdiction present a sensible way of resolving this jurisdictional problem. We agree with the conclusion that section 3628 "is simply inapplicable to this case." 686 F.Supp. at 668. Section 3628 provides for review by the appropriate United States Court of Appeals of a decision by the Board of Governors acting upon a recommended decision by the Postal Rate Commission. Neither the Board nor the Commission have taken any action with regard to Domestic Mail Manual § 425.226. Consequently, section 3628 does not apply. We agree that a federal district court has jurisdiction under 28 U.S.C. § 1339, 39 U.S.C. § 409(a) and the "well-established,

common-law presumption favoring judicial review of final administrative action," 686 F.Supp. at 668 (citations omitted), to entertain the question of whether a Postal Service regulation is *ultra vires.*

## IV. REVIEW OF DOMESTIC MAIL MANUAL 425.226

■ Our standard of review depends upon how we perceive Domestic Mail Manual § 425.226 and how we classify it within a given dichotomy. The case law makes clear that a Postal Service regulation regarding the classification of mail must either be (1) a valid interpretation of a class of mail established by the Board of Governors; or (2) a new and invalid classification of mail created outside of the procedures provided by the Postal Reorganization Act. If a reviewing court determines that a Postal Service regulation is a valid exercise of interpretive discretion, then enforcement of the rule may not be denied on the ground that it is *ultra vires.*[2] If the court determines that the regulation constitutes a classification of mail, then the rule is *ultra vires* and the court may enjoin its implementation "until such a time as [the Postal Service] has complied with the provisions of 39 U.S.C. §§ 3622–25." *United Parcel Service,* 604 F.2d at 1382.

Under the Postal Reorganization Act, the Board of Governors has "the exclusive and nondelegable authority to establish 'classes of mail' and 'rates of postage', 39 U.S.C. §§ 402, 3621, but only after the Governors have received a recommended decision from the Postal Rate Commission." *Id.* at 1377. The Postal Service may "not bring about a change in either rates or classifications of mail without first submitting the proposed change to the Commission" who in turn must issue a recommended decision to the Board of Governors. *United Parcel Service v. United States Postal Service,* 615 F.2d 102, 107 (3d Cir.1980). While it is clear that the Postal Service cannot "bypass the complex regulatory scheme of the Act," *id.,* it is also true that the Service "possesses a residuum of authority to interpret mail classifications in the process of implementing them, so long as that interpretation does not effect a substantive change in the types of mail or identity of mailers encompassed within the classification." *National Retired Teachers Ass'n,* 593 F.2d at 1363. This interpretive authority in part "stems from the practical reality that a classification schedule can only define general outlines." *Id.* Consequently the Service "must retain some flexibility and discretion to interpret the general provisions of the mail classification schedule in day-to-day implementation." *Id.* (footnote omitted).

■ A mail classification has been defined as "a 'grouping' of mailing matter for the purposes of assigning it a specific rate or method of handling. Relevant factors include size, weight, content, ease of handling, and identity of both posting party and recipient." *National Retired Teachers Ass'n,* 430 F.Supp. at 146–47 (footnote omitted). The relevant inquiry, then, in evaluating an *ultra vires* challenge to a Postal Service regulation is determining whether the regulation in question "does indeed work a change in the scope of a mail classification," *National Retired Teachers Ass'n,* 593 F.2d at 1363, through manipulation of one or any combination of these factors.

■ The Postal Service here urges us to find that Domestic Mail Manual § 425.226 is a valid interpretation of Domestic Mail Classification Schedule § 200.0123. This suggestion cannot be taken seriously. The district court correctly found it "patently clear ... that both the interim and final versions of DMM § 425.226 were more than mere interpretations of DMM § 200.0123." 686 F.Supp. at 670. The Service would have us uphold its regulation if only for the reason that it is consistent with the purposes underlying Domestic Mail Classification Schedule § 200.0123, however, as the district court noted, 686 F.Supp. at 670 n. 11, this argument demon-

---

**2.** We do not address the question of whether a Postal Service regulation may be challenged on some other grounds, such as failure to comply with the requirements of the Administrative Procedure Act. *See, e.g., National Teachers Ass'n,* 593 F.2d at 1364–65.

strates a failure on the part of the Service to recognize the distinction between the policies underlying Domestic Mail Classification Schedule § 200.0123 from the actual expression of those policies.

Domestic Mail Classification Schedule § 200.0123 established two criteria for determining whether "an 'issue' of a newspaper or other periodical" would be deemed to be a separate publication. Issues which failed to satisfy these criteria would have to meet the qualifications of Domestic Mail Classification Schedule §§ 200.0101–200.0109 or Domestic Mail Classification Schedule § 200.0110, independently of the qualification of other issues of the publication, in order to be eligible for second-class rates. *The Nashville Banner* and *The Tennessean* rearranged the publication of their "Plus" issues so as to avoid the reach of Domestic Mail Classification Schedule § 200.0123. That is, their "Plus" issues *were not* "published at a regular frequency on the same day as another regular issue of the same publication." Domestic Mail Classification Schedule § 200.0123(a). (emphasis added)

Interim Domestic Mail Manual § 425.226 failed to include the "same day" requirement of Domestic Mail Classification Schedule § 200.0123(a) or any reference to the day of publication. Final Domestic Mail Manual § 425.226 effectively overruled Domestic Mail Classification Schedule § 200.0123(a). For the "same day" criterion of Domestic Mail Classification Schedule § 200.0123(a), the Postal Service substituted the criterion that no issue be "published at a regular frequency, such as once a week, but not on the same day as another regular 'issue' of the same publication." Domestic Mail Manual § 425.226(a). This is not a valid interpretation of Domestic Mail Classification Schedule § 200.0123.

Instead it effectively works "a change in the scope of a mail classification." *National Retired Teachers Ass'n,* 593 F.2d at 1363. This act was *ultra vires* because it exceeded the powers granted to the Postal Service under the Postal Reorganization Act.

This conclusion is consistent with the finding of the district court. However, the court also found that Domestic Mail Manual § 425.226 expanded the scope of Domestic Mail Classification Schedule § 200.0123 to include "an additional class of mailers-publishers of *nondaily* newspapers." 686 F.Supp. at 670. (emphasis in original). In support of this position the court noted that the Postal Rate Commission "expressly recognized that the applicability of DMCS 200.0123 was limited to daily newspapers" in both the original and subsequent Advo litigation. *Id.* The Postal Service correctly argues, and we agree, that this issue is not properly before this Court nor was it properly before the court below.[3]

The Postal Service suggests that the district court mistakenly took Domestic Mail Classification Schedule § 200.0123 as the basis upon which the Service sought to justify Domestic Mail Manual § 425.226. The Service argues that its regulation is justified by Domestic Mail Classification Schedule § 200.012 which excludes publications "designed primarily for advertising purposes, free circulation, or circulation at nominal rates" from second-class eligibility. The Service notes that it referred to Domestic Mail Classification Schedule § 200.012 when explaining the basis for interim Domestic Mail Manual § 425.226 in the Federal Register. *See* 51 Fed.Reg. 25,525 (July 15, 1986). The service did not, however, refer to Domestic Mail Classification Schedule § 200.012 in its explanation

---

**3.** This holding by the district court raises a host of difficult questions including standing and justiciability which are not properly before us. For example, 39 U.S.C. § 3662 provides that "[i]nterested parties" may lodge complaints with the Postal Rate Commission. *The Nashville Banner* and *The Tennessean* are daily publications. Are they then "interested parties" which can challenge the Postal Service's supposed alteration of Domestic Mail Classification Sched-

ule § 200.0123? The court found the Commission "expressly recognized that the applicability of DMCS 200.0123 was limited to daily newspapers ..." 686 F.Supp. at 670. This is complicated by the fact that Domestic Mail Classification Schedule § 200.0123 on its face is *not* limited to daily newspapers, and the fact that this seems to be contrary to the Commission's language in the Advo litigation.

of final Domestic Mail Manual § 425.226, *see* 51 Fed.Reg. 33,608 (September 22, 1986). Indeed, here the Service tries to justify the final rule in terms of what it believes is the purpose and intent of Domestic Mail Classification Schedule § 200.0123. *See Fed.Reg.* at 33,609 (September 22, 1986).

■ The Service's assertion that Domestic Mail Manual § 425.226 is legitimate because it is a valid interpretation of Domestic Mail Classification Schedule § 200.012 is not credible. The Service focused its attention on Domestic Mail Classification Schedule § 200.0123 when drafting Domestic Mail Manual § 425.226. More importantly, the Service could not, as it suggests, deny second-class eligibility to *The Tennessean's* and *The Nashville Banner's* "Plus" issues because those issues independently fail to satisfy the other requirements for second-class eligibility including Domestic Mail Classification Schedule § 200.012.[4] This argument presumes that "Plus" issues had to qualify independently for second-class eligibility prior to Domestic Mail Manual § 425.226, when in fact, the opposite was true. Prior to the adoption of Domestic Mail Classification Schedule § 200.0123 and after its adoption, following the plaintiffs' change in publication schedule, "Plus" issues were not treated as independent publications, despite their advertisement dominated contents. Indeed, Domestic Mail Classification Schedule § 200.0123 was written with the presumption in mind that "Plus" issues were issues of the newspaper or periodical which published them, and as such entitled to second-class rates.[5] Consequently, regardless of which section of the Domestic Mail Classification Schedule the Postal Service relies upon to support its

regulation, Domestic Mail Manual § 425.226 altered the eligibility criteria for second-class rates. The Postal Service lacked the statutory power to do this, and so Domestic Mail Manual § 425.226 is void.

## V. *REFUND*

■ The district court found that despite the fact that Domestic Mail Manual § 425.226 was improper, under 39 U.S.C. § 3681 Combined Communications and Nashville Banner Publishing were not entitled to a refund for the excess postage they paid during the time that Domestic Mail Manual § 425.226 was in effect. Section 3681 of Title 39 provides:

> No mailer may be reimbursed for any amount paid under any rate or fee which, after such payment, is determined to have been unlawful after proceedings in accordance with the provisions of section 3628 of this title, or is superseded by a lower rate or fee established under subchapter II of this chapter.

Combined Communications and Nashville Banner Publishing here argue that because section 3628 does not apply to this case neither does section 3681. Furthermore, they argue that the policies underlying section 3681 are inapplicable to this case. They assert that Congress chose to make presumptively valid those rates and classifications issued in compliance with the procedures of the Postal Reorganization Act. In other words, they assert that a Board decision made in response to a Commission recommendation and pursuant to 39 U.S.C. §§ 3622–3625 is presumptively valid. A change in mail classification which complies with these procedures ensures that interested parties enjoy the protection Congress

---

**4.** "A publication that escapes the reach of DMCS § 200.0123 because it is not a 'same day' 'Plus' publication still must qualify as an issue of a newspaper or other periodical publication that has second-class eligibility, including those prohibiting second-class rates for a publication designed primarily for advertising purposes, free circulation, or circulation at nominal rates." Appellee's Brief at 29.

**5.** Furthermore, the Postal Service's assertion that Domestic Mail Manual § 425.226 is a valid interpretation of Domestic Mail Classification

Schedule § 200.0123 raises the question of whether Domestic Mail Classification Schedule § 200.0123 was necessary at all. It is not the proper role of this court to say how an administrative agency may best fulfill its purpose. We gather, however, from the Postal Rate Commission's recommended decision in the initial Advo case and the Board of Governors' acceptance of that recommendation, that the denial of second-class rates to *at least* the "Plus" issues of daily newspapers could not be addressed administratively.

intended, including the opportunity for notice and comment. A change in classification that does not follow these procedures is not entitled to the same presumption of validity.[6]

This argument makes little sense on its own terms. A classification may be entitled to presumptive validity if it is adopted pursuant to the procedures in the Act. If a classification is found to be "unlawful" under section 3681, however, those procedural protections were ineffective. Nonetheless, section 3681 prohibits reimbursement in such a situation. There is no basis in the Act or its statutory history for finding a desire on the part of Congress to allow reimbursement where a classification was "unlawful" but procedurally correct, and not to allow a reimbursement where a classification was both "unlawful" and procedurally deficient.

The district court similarly found that 39 U.S.C. § 3681 and the policy underlying it required that the Service's decision not to award a refund be upheld. Section 3681 provides that "[n]o mailer may be reimbursed for any amount paid under any rate or fee which, after such payment, is determined to have been unlawful after proceedings in accordance with the provisions of section 3628...." Although Combined Communications and Nashville Banner Publishing conceded that their *ultra vires* challenge to Domestic Mail Manual § 425.226 was not about the legality of a classification recommended by the Commission and approved by the Board of Governors, the court "found nothing in the general scheme or legislative history of the Act 'to indicate that Congress did intend this limitation to apply when agency action is challenged as *ultra vires* rather than substantively unsound or procedurally irregular.'" 686 F.Supp. at 670 (quoting *United Parcel Service v. United States Postal Service*, 524 F.Supp. 1235, 1246

(D.Del.1981)). Moreover, the district court found that the policy underlying section 3681, a desire on the part of Congress "to avoid controversy that could seriously disrupt the provision of postal services," *id.*, would be best served by applying section 3681 to *ultra vires* acts by the Postal Service.

 We agree with this conclusion and find additional support for it in the structure of the Act. We have reviewed this case under the general grant of jurisdiction which Congress gave to federal courts under 28 U.S.C. § 1339 and 39 U.S.C. § 409(a). We have not reviewed this case under the grant of appellate review provided in 39 U.S.C. § 3628. Section 3681 provides that no mailer shall be reimbursed for payment of a rate or fee "determined to have been *unlawful* after proceedings in accordance with the provisions of section 3628...." (emphasis added). It appears that the "unlawfulness" of a payment must be gleaned by the court of appeals in its review under section 3628. Section 3628 provides that this court "shall review the decision [of the Board of Governors upon the recommended decision of the Postal Rate Commission] in accordance with section 706 of title 5, chapter 158 and section 2112 of title 28...." Under 5 U.S.C. § 706, a court which is reviewing agency action may

> (2) hold unlawful and set aside agency action findings, and conclusions found to be ...
>
> > (C) in excess of statutory jurisdiction, authority or limitations, or short of statutory right;
> >
> > (D) without observance of procedure required by law....

We have held that what the Postal Service did was "in excess of statutory ... authority" and "without observance of procedure required by law." The promulgation and

---

6. Combined Communications and Nashville Banner Publishing also argue that under the Postal Service's own regulation, Domestic Mail Manual § 147.2, a reimbursement is required. This argument is specious. Domestic Mail Manual § 147.211 states that "[w]hen postage and special or retail fees have been paid, and no service is rendered, or when the amount collect-

ed was in excess of the lawful rate a refund may be made...." (emphasis added). Because the language used is clearly conditional and permissive, not imperative, the payment of refunds is discretionary on the part of the Postal Service. This reading is consistent with former 39 U.S.C. § 4055 (1960), and with the decision of the district court. *See* 686 F.Supp. at 671 n. 11.

enforcement of Domestic Mail Manual § 425.226 was *ultra vires*. Had we, however, been reviewing a decision by the Board of Governors under 39 U.S.C. § 3628 and consequently under 5 U.S.C. § 706, and had we found the Board's actions to be "in excess of statutory ... authority" or "without observance of procedure required by law...." we would have been precluded from ordering a reimbursement under 39 U.S.C. § 3681. Congress did not intend a refund where the Postal Service's *ultra vires* acts bring financial detriment to some private party.

The judgment of the district court is affirmed.

KRUPANSKY, Circuit Judge, dissenting.

This action was properly initiated before the Postal Rate Commission (Commission) by the Combined Communication Corp. and the Nashville Banner Publishing Co. (plaintiffs), as aggrieved parties, pursuant to the Congressional mandate expressed in 39 U.S.C. § 3662 of the Postal Reorganization Act of 1970 [1] (the Act), by filing a complaint wherein they asserted that the Postal Service (Service) was charging them rates which did not conform to the policies set out in the Act and that they were not receiving postal service in accordance with its policies, as a result of which, their "Plus" publications were denied a second class mail and rate classification as authorized by § 200.0123 of the Domestic Mail Classification Schedule (DMCS). As a result of the Service's alleged illegal acts, the plaintiffs sought an injunction requiring the Service to move "Plus" publications at second class rates and a refund of the postage improperly collected by the Service, being the difference between second and third class postage.

Pursuant to § 3662 of the Act, the Commission conducted hearings to consider and determine if plaintiffs' "Plus" publications qualified for second class mail and rate privileges under duly promulgated and effective § 200.0123 of the DMCS and to further determine if the Service was illegally denying them those privileges by the enforcement of an alleged invalid rule of its Domestic Mail Manual (DMM) [2] § 425.226. The Commission issued a decision wherein it ordered that:

the right forum for determining the validity of a Postal Service rule, purportedly issued under its independent adminis-

1. Title 39 U.S.C. § 3662 provides, in pertinent part, as follows:

Interested parties who believe the Postal Service is charging rates which do not conform to the policies set out in this title or who believe that they are not receiving postal service in accordance with the policies of this title may *lodge a complaint with the Postal Rate Commission* in such form and in such manner as it may prescribe. The Commission may in its discretion *hold hearings* on such complaint. If the Commission, in a matter covered by subchapter II of this chapter, determines the complaint to be justified, it *shall,* after proceedings in conformity with section 3624 of this title, issue a recommended decision which *shall* be acted upon in accordance with the provisions of section 3625 of this title [by the Governors] and subject to review in accordance with the provisions of section 3628 of this title [direct appeal to any court of appeals in the United States]. (emphasis added).

Title 39 U.S.C. § 3628 provides that:

A decision of the Governors to approve, allow under protest, or modify the recommended decision of the Postal Rate Commission may be appealed to any court of appeals of the United States, within 15 days after its publication by

the Public Printer, by an aggrieved party who appeared in the proceedings under section 3624(a) of this title. The court shall review the decision, in accordance with section 706 of title 5, and chapter 158 and section 2112 of title 28, except as otherwise provided in this section, on the basis of the record before the Commission and the Governors. The court may affirm the decision or order that the entire matter be returned for further consideration, *but the court may not modify the decision.* The court shall make the matter a preferred cause and shall expedite judgment in every way. The court may not *suspend the effectiveness of the changes, or otherwise prevent them from taking effect until final disposition of the suit by the court. No court shall have jurisdiction to review a decision made by the Commission or Governors under this chapter except as provided in this section.* (emphasis added).

2. The Domestic Mail Manual is a compendium of Postal Service rules promulgated and issued under its independent administrative authority to provide uniform interpretation and implementation of the Domestic Mail Classification Schedule (DMCS). The DMM is incorporated in the Code of Federal Regulations by reference pursuant to 39 C.F.R. § 111.1.

trative powers, would be a United States District Court, *National Retired Teachers Association v. USPS*, 430 F.Supp. 141 (D.D.C.1977), *aff'd*, 193 U.S.App.D.C. 206, 593 F.2d 1360 (1979).[3]

Without exhausting their available administrative remedies by petitioning the Board of Governors (Governors) to review the Commission's order and thereafter appealing directly to this court pursuant to the requirements of § 3628 of the Act, if warranted, the plaintiffs immediately abandoned their complaint before the Commission and commenced this action before the district court asserting the same charges that they had advanced before the Commission.

The trial court improvidently exercised plenary jurisdiction over the plaintiffs' case and resolved the substantive issues of the controversy with the following decision:

> For the reasons set forth above, the Court grants plaintiffs' motion for summary judgment in part and orders that judgment be entered in plaintiffs' favor for:
>
> 1. A declaration that DMM § 425.226 is unlawful to the extent that it modifies the existing DMCS; and
>
> 2. An injunction requiring the USPS to carry *The Sunday Tennessean* FOCUS and *The Nashville Banner* NEIGHBORHOOD at second-class rates in accordance with DMCS § 200.0123.
>
> Plaintiffs' request for a postage refund, however, is hereby denied.

*Combined Communications Corp. v. U.S. Postal Service*, 686 F.Supp. 663 (M.D.Tenn. 1988).

The trial court's disposition, as affirmed by the panel majority, apart from presenting an intracircuit precedential conflict, encourages litigants to forego the exhaustion of available administrative remedies in lieu of district court jurisdiction to adjudicate mail schedule and rate claims despite the express prohibition of 39 U.S.C. §§ 409 and 3628, merely by challenging the validity of a DMM rule which the Service has enacted and relied upon in denying mail and rate classifications to which claimants have asserted entitlement. The instant case demonstrates how litigants, who challenge mail classifications and rate schedules which are in discord with "the policies set out in this title or who believe they are not receiving postal services in accordance with the policies of this title," may elect not to pursue available administrative remedies by artfully pleading the invalidity of a Service rule. "It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Block v. North Dakota*, 461 U.S. 273, 285, 103 S.Ct. 1811, 1818, 75 L.Ed.2d 840 (1983) (quoting *Brown v. GSA*, 425 U.S. 820, 833, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976)).

The futility of the expended judicial effort and resource accorded to this case becomes apparent with the obvious realization that the issues joined and resolved by the district court were identical to those joined before the Commission which could and should have been resolved by the administrative and judicial procedure mandated by the Act.

In sum, subchapter II of the Postal Reorganization Act of 1970 presents an unusual example of Congressional lucidity in drafting comprehensive legislation that provides for an orderly and effective administrative and judicial procedure to expeditiously entertain, process, consider, adjudicate, and dispose of citizen complaints challenging Service imposed mail and rate classifica-

---

3. *National Retired Teachers Ass'n v. United Postal Service*, 430 F.Supp. 141 (D.D.C.1977), *aff'd*, 193 U.S.App.D.C. 206, 593 F.2d 1360 (1979) and *United Parcel Service v. United States Postal Service*, 455 F.Supp. 857 (E.D.Pa.1973), *aff'd*, 604 F.2d 1370 (3d Cir.1979), *cert. denied*, 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 815 (1980), relied upon by the Commission, the district court, and now the panel majority of this court, as precedent for invoking the jurisdiction of the district court in mail classification and rate cases without first exhausting administrative remedies, are two district court decisions outside of this circuit wherein the jurisdictional issue of the instant case or any jurisdictional issue was not joined by the parties or considered by the courts. In both instances, the court of appeals summarily affirmed the district court's disposition without comment.

tions and/or postal service conferred by the Act. The legislation has effectively accorded the public procedural due process, has confined mail classification and rate-making regulations within the Service, where those procedures rightfully belong, and it has efficiently conserved the judicial resource by thoughtful jurisdictional limitations calculated to protect the courts from the burden of resolving every challenge to the mail and rate schedules adopted by the service. The clarity of the legislation leaves no room for interpretation.

The only ambiguity arising from subchapter II of the Act results from the confusion prompted by the Commission's obfuscated reasoning in directing the plaintiffs to invoke the plenary jurisdiction of the district court, the abandonment of the plaintiffs' complaint initiated pursuant to § 3662 without exhausting their administrative remedies, and the improvident and improper exercise of plenary jurisdiction by the trial court over a controversy expressly beyond its authority which action is now endorsed by the panel majority's disposition of this appeal.

The bright line demarcation between administrative and original judicial jurisdiction which has heretofore existed is obscured, if not completely obliterated, by the majority's effort to distinguish the instant case from the pronouncements of this circuit in *The Enterprise, Inc. v. Bolger*, 774 F.2d 159 (6th Cir.1985) (hereinafter referred to for convenience as "*Enterprise I*"), and by its attempt to create a fictional precedential interrelationship between it and *The Enterprise, Inc. v. United States*, 833 F.2d 1216 (6th Cir.1987) (hereinafter referred to for convenience as "*Enterprise II*"), decided two years after *Enterprise I*. *Enterprise I* is the only case that addresses the jurisdictional issues of the instant case.

Initially, it should be noted that this circuit has viewed, with disapproval, the majority's premise that "[w]e have reviewed this case under the general grant of jurisdiction which Congress gave to federal courts under 28 U.S.C. § 1339 and 39 U.S.C. § 409(a)[; w]e have not reviewed this case under the grant of appellate review provided in 39 U.S.C. § 3628." In addressing this issue in *Enterprise I*, this circuit observed that "we are not unaware of the plaintiff's assertion that jurisdiction is vested in the district court by 39 U.S.C. § 409, but we note that § 409 specifically exempts cases covered by § 3628 from its coverage." *The Enterprise, Inc.*, 774 F.2d at 161. Moreover, the jurisdictional provisions of 39 U.S.C. §§ 401, 409 and 28 U.S.C. §§ 1331 and 1339 merely provide for a waiver of otherwise applicable sovereign immunity and confer subject matter jurisdiction upon district courts in certain circumstances outside the orbit of mail schedule and rate classification controversies. A jurisdictional statute does not itself provide a cause of action of a substantive basis for relief. *Phillips Petroleum v. Texaco, Inc.*, 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974). Judicial review by a district court of a Postal Service rule, as a substitute for the administrative remedy and judicial review provisions mandated by Congress, is foreclosed by 39 U.S.C. §§ 3662 and 3628. Even in the absence of an expressed statutory comment of exclusiveness, the statutory mode must be followed where Congress has enacted a specific statutory scheme of review. *Whitney National Bank v. New Orleans Savings & Trust Company*, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965).

*Enterprise I* is factually indistinguishable from and dispositive of the instant action. Both cases charged the Service with denying a second class mail and rate classification for predominantly advertising oriented mail to nonsubscribers by enforcing invalid rules of its Domestic Mail Manual. In the case of *Enterprise I*, an unconstitutional rule; in the instant case, an invalid rule resulting from usurping the authority reserved for the Commission and the Governors. In both *Enterprise I* and the instant case, the aggrieved parties failed to exhaust their administrative remedies mandated by the Act. In the case of *Enterprise I*, the publishers completely ignored the mandate of the Act by improperly invoking the plenary jurisdiction of the district court. In the instant case, the

plaintiffs, after initially filing a complaint with the Commission, abandoned it without petitioning the Governors to review the Commission's order and without appealing the Governors' adverse disposition directly to this court. In both cases, the Service moved to dismiss the appeal from the district court's decision asserting its lack of plenary jurisdiction. This court confronted the jurisdictional issue in *Enterprise I* and concluded that:

> Upon consideration, the court is of the opinion that the Postal Service is correct in its contention that review of a mail rate or classification decision such as that involved here may be sought only on review in the United States Court of Appeals and not by plenary action in the district court. 39 U.S.C. § 3628.

The legislative history of the Postal Reorganization Act, 39 U.S.C. §§ 101–5605, plainly supports this view, and the House Report on the Act further indicates a Congressional intent that even constitutional questions such as those asserted here should be raised initially at the agency level followed by review of the agency's classification decision in the courts of appeal. *See* H.R.Rep. No. 1104, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Ad. News 3649, 3695 ("[J]udicial review ... is confined to constitutional, statutory and procedural questions which were raised before the [Postal] Authority").... The specific reference to constitutional questions in the House Report shows that Congress intended even those issues to be raised before the agency. See also *Reader's Digest Association v. United States Postal Service*, 501 F.Supp. 126, 128–29 (D.D.C.1980), *appeal dismissed as moot, Dow Jones & Co. v. United States Postal Service* [211 U.S.App.D.C. 197], 656 F.2d 786 (D.C.Cir.1981), wherein the district court in dismissing the publisher's action recognized that section 3628 "explicitly says that review of Governor's decision on rate matters lies in the Court of Appeals [and that deciding the case before it] would draw the Court into territory reserved exclusively to the Court of Appeals"; and *United Parcel Service,*

*Inc. v. United States Postal Service,* 524 F.Supp. 1235 (D.Del.1981).

\* \* \* \* \* \*

In ruling that the district court was without jurisdiction, we find it unnecessary to pass upon the merits of the other grounds raised as bases for reversal.

Accordingly, the judgment of the district court is VACATED and the cause REMANDED to the district court with instructions to dismiss the complaint.

*The Enterprise, Inc. v. Bolger,* 774 F.2d 159, 161–62 (6th Cir.1985), *see also Shelby Resources, Inc. v. United States Postal Service,* 619 F.Supp. 1546, 1549 (S.D.N.Y. 1985) ("[T]he sole remedy for a user of postal service who is not receiving adequate service or service equal to that furnished to others" is to file a complaint, pursuant to 39 U.S.C. § 3662, with the Postal Rate Commission).

The clarity of this circuit's pronouncements in *Enterprise I,* like the clarity of subchapter II of the Act, leaves no room for interpretation. Moreover, the panel majority's effort to interrelate the decisions of *Enterprise I* with *Enterprise II* is unpersuasive. *Enterprise II* was decided two years after this circuit dismissed *Enterprise I* for failure to exhaust available administrative procedures mandated by the Act. This circuit entertained the appeal in *Enterprise II* only *after* the publisher implemented the mandated requirements of the Act with the filing of a complaint before the Commission, petitioning the Governors for review of the Commission's order and thereafter appealing from that adverse decision to this court. The only significance of *Enterprise II* to the instant case is that it demonstrates the complete and total effectiveness of the administrative procedures and appellate review incorporated into the Act.

For the foregoing reasons I respectfully dissent from the panel majority's disposition for the reasons enunciated by this circuit in *Enterprise I* and the reasons stated herein and would accordingly vacate the decision of the district court and re-

**1236**

mand the case with instructions to dismiss the complaint.

In ruling that the district court is without jurisdiction, I find it unnecessary to pass upon the merits of the other issues confronting this appeal.